[L. A. No. 12842. In Bank.—December 27, 1932.]

EMILY MARIA BEE et al., Appellants, v. C. C. COOPER et al., Respondents.

B. A. Mason and Norman T. Mason for Appellants.

A. A. Rezac and Cruickshank, Brooke & Evans for Respondents.

WASTE, C. J.—Plaintiffs appeal from a judgment entered in favor of the defendants upon the granting of a motion for nonsuit.

The cause went to trial on plaintiffs' second amended complaint, wherein it is alleged, in substance, that the plaintiffs are stockholders of the Federal Building & Finance Company, a corporation; that prior to the filing of this action they had, without avail, made demand on the corporation to take the necessary steps to recover certain of its assets alleged to have been wrongfully disposed of by its seven former directors named, among others, as defendants herein; that in March, 1927, said seven directors "conceived and undertook to carry out a plan" to dispose of their personal stock in the corporation, together with that of their friends (defendants Bush, Nowlan and Yaussi), and whereby they should secure the sum of $196,000; that the defendants Wright and Downing co-operated with them and aided the defendant directors in the conception and execution of the plan; that the defendants Federal Mortgage Company, Bush, Nowlan and Yaussi also knew of the plan; that in pursuance of such plan, and without the knowledge, consent or authority of the other stockholders of the corpo-

ration, the said seven former directors, defendants herein, transferred to one L. S. Farmer, a dummy or intermediary, approximately one-half of the assets of the corporation, having a value of $196,000, in exchange for rights to purchase 18,000 shares of the common stock of the National Mortgage Company at $5 a share; that these rights were valueless, as the defendant directors well knew, or should have known; that these rights were never exercised; that in accordance with said plan and in execution thereof the defendant Farmer, the intermediary, transferred said $196,000 in assets to the defendant Federal Mortgage Company, which latter company distributed such assets, or their equivalent in cash, to the defendant directors and their friends in proportion to their stock ownership in the defendant Federal Building & Finance Company, whereupon their stock and voting control in the latter corporation was transferred to the defendants Wright and Downing and Wright, Alexander & Company; that the defendant members of the board of directors thereupon resigned, and a new board was elected, which has since sought to dissolve the corporation; that the former directors conceived and carried out the unauthorized and illegal transfer of the corporate assets to themselves through an intermediary, with full knowledge of their want of authority so to do, and of the illegal and fraudulent character thereof; and that the parties defendant to whom the stock was transferred and those defendants who received, retained and used the diverted assets of the corporation "had notice and knowledge of the plan in pursuance of which said stock and said assets were received and acquired, as well as notice and knowledge of the official position of the said defendants as directors of the Federal Building & Finance Company, and had notice and knowledge of the ownership of the assets of the Federal Building & Finance Company and of the disposition made and to be made thereof". The complaint then prays for judgment against all of the defendants in the sum of $450,000.

The cause went to trial on the issues raised by the second amended complaint and the answers thereto. At the conclusion of the plaintiffs' case, the plaintiffs stipulated to a dismissal as to the defendants Mary S. Cooper and Julia A. Smith. As to the remaining defendants, the plaintiffs were nonsuited. This appeal followed.

 Inspection of the record discloses that the trial court was of the opinion that the evidence failed to establish the cause of action alleged in the complaint. Upon an examination of the evidence, we are satisfied that the court below was correct in this regard. The evidence falls far short of establishing the illegal and fraudulent conspiracy charged in the complaint to have been conceived and executed for the purpose of improperly diverting the assets of the corporation. However, we need not rest our decision on this ground alone. In addition to the allegations above set forth, the complaint alleged that subsequent to the institution of this action five of the seven defendant directors had returned or delivered "to a trustee for the benefit of these plaintiffs and on account of the conversion or misappropriation of assets hereinbefore alleged, the sum of $41,465.64, which amount should be credited upon any judgment rendered herein". The defendants, in their respective answers, alleged that the plaintiffs, in consideration of such payment, had fully compromised, settled and dismissed the action as to said five defendant directors. Such release is thereupon pleaded as a release of all the defendants and a complete settlement of the cause of action alleged.

The evidence shows that subsequent to the commencement of this action the plaintiffs and five of the defendant directors entered into a written "Settlement Agreement" whereby, in consideration of said five defendants paying over to a trustee the respective portions or percentage of the money and other property received by them as the result of the alleged illegal and fraudulent conspiracy, the plaintiffs agreed to settle and dismiss this action as to said defendants. Thereafter, and pursuant to this agreement, five of the defendant directors did pay over said moneys to a trustee, and this action, at the request of the plaintiffs, was dismissed as to them. The agreement was not a mere covenant not to sue, as appellants would have us construe it. A reading of the instrument very definitely discloses that it was the intention of the parties thereto to fully settle, compromise and dismiss the cause of action here sued on, in so far as certain defendants are concerned. (*Hawber* v. *Raley*, 92 Cal. App. 701, 704 [268 Pac. 943].) The dismissal was on the merits and intended to settle the differences and obligations between the parties growing out of the cause

of action set forth in the complaint. It is well settled that a release of one of two or more joint tort-feasors operates as a release of all. (*Chetwood* v. *California Nat. Bank,* 113 Cal. 414 [45 Pac. 704]; *Tompkins* v. *Clay St. R. R. Co.,* 66 Cal. 163 [4 Pac. 1165]; *Johnson* v. *Pickwick Stages System,* 108 Cal. App. 279, 283-285 [291 Pac. 611]; *Bogardus* v. *O'Dea,* 105 Cal. App. 189, 192, 193 [287 Pac. 149]; *Hawber* v. *Raley,* 92 Cal. App. 701, 702-706 [268 Pac. 943]; *Flynn* v. *Manson,* 19 Cal. App. 400-406 [126 Pac. 181].) The reason for the rule is well stated in the case first above cited, wherein it is declared: "While plaintiff may sue one or all of joint tort feasors, and while he may maintain separate actions against them, and cause separate judgments to be entered in such actions, he can have but one satisfaction. Once paid for the injury he has suffered, by any one of the joint tort feasors, his right to proceed further against the others is at an end. Where several joint tort feasors have been sued in a single action, a retraxit of the cause of action in favor of one of them operates to release them all. The reason is quite obvious. By his withdrawal, plaintiff announces that he has received satisfaction for the injury complained of, and it would be unjust that he should be allowed double payment for the single wrong. It matters not, either, whether the payment made was in a large or in a small amount. If it be accepted in satisfaction of the cause of action against the one, it is in law a satisfaction of the claim against them all."

The "settlement agreement" here involved contains, among others, the following clause: "Seventh. As and when any of said parties of the second part [defendants] shall pay or deliver to said trustee that which is required of him hereunder this action shall be dismissed as to such party, but nothing herein contained shall in any manner prejudice the prosecution of said pending action or of any other action against any other defendant herein or against any other person who may be liable on account of the matters therein complained of." This purported reservation of plaintiffs' rights against the remaining defendants herein is nugatory and of no effect. (*Flynn* v. *Manson, supra,* pp. 402-406.) Such a provision is void as being repugnant to the legal effect and operation of the release itself. (*Gunther* v. *Lee,* 45 Md. 60 [24 Am. Rep. 504].) In *Ruble* v.

*Turner*, 12 Va. (2 IIen. & M.) 38, cited with approval in *Flynn* v. *Manson, supra,* it is held that "The law says that if one joint trespasser be released, or make accord and satisfaction, it shall bar a recovery against all the others. The plaintiff can no more change the law in this particular by any subsequent proviso or condition than he could, after a grant in fee simple by deed, restrain his grantee from selling the lands . . . The proviso then is merely void, and cannot prevent the legal effect of the accord and satisfaction made by one of the defendants."

Appellants concede that "when a release is given to one of several joint tort-feasors in consideration of *complete satisfaction* for the injury, but reserving the releasor's claim against the others, the reservation is void; because in that case there is nothing to reserve". This principle is peculiarly applicable to the present case, for a reading of the evidence and the "settlement agreement" readily discloses that the moneys paid by five of the defendants, and the release and dismissal given in consideration thereof were in *complete satisfaction* and in full settlement of the cause of action so far as said five defendants were concerned. This being so, the purported reservation as to the remaining defendants is void, for "there is nothing to reserve".

█ Appellants cite section 1543 of the Civil Code to the effect that "a release of one of two or more joint debtors does not extinguish the obligations of any of the others . . . " That section, by its very language, has application only to contractual obligations and not to the obligations of joint tort-feasors. (*Aigeltinger* v. *Whelan,* 133 Cal. 110, 113 [65 Pac. 125].) There is no room for argument upon the question as to whether this complaint is upon a cause of action *ex contractu* or upon one sounding in tort. While the appellants describe the action as one in equity to recover certain corporate assets alleged to have been improperly transferred by the board of directors, the action contains nothing more than a charge *ex delicto* against the directors and their co-defendants for fraudulently conspiring to divert the corporate assets. Applying to this case the reasoning employed in *Chelwood* v. *California Nat. Bank, supra,* there can be no doubt but that the cause of action here alleged sounds in tort, and that the several defendants are charged as joint tort-feasors. The gravamen of the com-

plaint is the alleged collusion and fraudulent plan asserted to have been conceived and executed by the defendants for the purpose of diverting the corporate assets. It necessarily follows, therefore, that the release and discharge of some of the joint tort-feasors, in consideration of their payment to appellants of certain moneys for the loss and damage suffered by reason of the tort complained of, works a release of the remaining joint tort-feasors. This being so, appellants were properly nonsuited.

The judgment is affirmed.

Preston, J., Langdon, J., Shenk, J., Tyler, J., *pro tem.*, and Seawell, J., concurred.