**JENKINS et al. v. SOUTHERN PAC. CO. et al.**

No. 7412.

District Court, S. D. California, Central Division.

Jan. 7, 1937.

L. H. Phillips, of Los Angeles, Cal., for plaintiffs.

W. I. Gilbert, of Los Angeles, Cal., for defendants Southern Pac. Co. and Fred M. Dolsen.

Robert Brennan, M. W. Reed, Leo E. Sievert, and H. K. Lockwood, all of Los Angeles, Cal., for defendants Pullman Co., H. J. Hatch, and Edward E. Myers.

Livingston & Livingston and Lawrence Livingston, all of Los Angeles, Cal., for defendant A. J. Kash.

YANKWICH, District Judge (after stating the facts as above).

The second amended complaint, on which the action comes to trial, sets forth two causes of action. The first cause of action is against all the defendants, including the defendant Kash, who committed the assault. And while there is a different violation of duty alleged as to each of the several defendants, the cause of action is based upon the same assault on the deceased. The cause of action is stated jointly against all the defendants, and the death which resulted is traceable to the acts of all.

824

There is an allegation in paragraph XV, that the action is brought against the Southern Pacific Company under the Federal Employers' Liability Act (chapter 2, section 51 et seq., title 45 U.S.C.A.), but the act around which the cause of action turns is still the assault committed, or allowed to be committed, or contributed to negligently by the defendants, by their doing or failing to do certain things.

■ The second cause of action is against Kash alone. Such joinder is allowable under the new rules of joinder. California Code of Civil Procedure, §§ 379, 379a, 379b; and see Peters v. Bigelow (1934) 137 Cal. App. 135, 30 P.(2d) 450; Yankwich: Joinder of Parties In the Light of Recent Statutory Changes (1929) 2 So.Cal.Law Review, 315, 337; Comment, Joinder of Parties (1934) 7 So.Cal.Law Review, 470. However, the cause of action is still the same. It charges Kash with the same act of assault.

■ And while, in the prayer, separate damages are asked, the second cause of action is merely a restatement, as to the defendant Kash, of the same cause of action wherein he is joined with the others, the thought being, I assume, that circumstances might arise showing the several liability of one defendant rather than joint liability of him and the others. There is no negligence charged in the second cause of action, as Kash is charged merely with the doing of a certain act—assault. The first cause of action is based upon the same assault. But the defendants are tied to it by allegations of failure to do certain acts, or failure to prevent the assault. Each party is sought to be held because there was an assault of one man, for which the others became liable.

We have exactly the same situation as in an automobile accident, wherein the driver of an automobile does a negligent act, and that negligence is imputed to the owner of the automobile because he is the owner or has allowed the driver to drive the car. However, it is still the same cause of action. I think, therefore, that there is but one cause of action and that several parties contributed to it in various manners. But what determines the joint, or joint and several liability, is the fact that it arises out of a single state of facts, to which each of the defendants is related, in some manner, some as employers, some as agents or employees, some as common carriers, and some in other or different capacities. The situation is akin to other joint torts, such as libel. The person who composes the libel is liable because he wrote it; the editor of the newspaper which prints the libel is liable because he permitted it to be published, as is also the owner of the newspaper. Still there is one joint or joint and several liability, although each may be held liable upon a different theory of liability.

My summary of the pleading would be that the theory of liability differs as between the several defendants, some being held on one theory, and some on another, but that the cause of action is essentially the same, that is, a tort. A tort indulged in by one person and for which the others are sought to be bound by reason of their failure to prevent it when it was their duty to do so. Ultimately, the assault is the basis of the right of action. And that was, of course, the same in both causes of action.

■ I do not think there is any disagreement between counsel, or between counsel and the court, as to the principles of law laid down by the cases. The difference is in their application. The cases [see Chetwood v. California Nat. Bank (1896) 113 Cal. 414, 45 P. 704, 707; Flynn v. Manson (1912) 19 Cal.App. 400, 126 P. 181; Adams v. Southern Pacific Co. (1928) 204 Cal. 63, 266 P. 541, 57 A.L.R. 1066; Hawber v. Raley (1928) 92 Cal.App. 701, 268 P. 943; Bogardus v. O'Dea (1930) 105 Cal. App. 189, 287 P. 149, 150; Bee v. Cooper (1932) 217 Cal. 96, 17 P.(2d) 740; Kincheloe v. Retail Credit Co. (1935) 4 Cal. (2d) 21, 24, 46 P.(2d) 971; Shea v. San Bernardino (Cal.Sup.1936) 62 P.(2d) 365] lay down certain fundamental principles. They are: Any release, *retraxit*, or abandonment of the cause of action, made for a consideration, against one joint tortfeasor, will release all others, whether it was the intention of the parties to do so or not. And this although the agreement (as was the case in Flynn v. Manson, supra, and Bee v. Cooper, supra) states that the settlement shall not, in any way, affect the cause of action against *any other person* than the one mentioned in the instrument. The release must be made with the understanding that it is accepted in full satisfaction. If the damage is severable, payment by one does not release the others. See Wallner v. Barry (1929) 207 Cal. 465, 279 P. 148.

■ A mere covenant not to sue, which does not contain words amounting to a release of the cause of action, or which negatives such release, is not effective for the purpose of releasing other joint tort-feasors. Hawber v. Raley, supra; Kincheloe v. Retail Credit Co., supra; City of Chicago v. Babcock (1892) 143 Ill. 358, 32 N.E. 271, 272; Johnson v. Pickwick Stages System (1930) 108 Cal.App. 279, 283, 291 P. 611; The Thomas P. Beal (D.C.Wash.1924) 298 F. 121, 122; Carey v. Bilby (C.C.A.8, 1904) 129 F. 203, 206.

The question, therefore, in this, as in every case, is whether the particular instrument was one of release, or merely a covenant not to sue.

In Bee v. Cooper, supra, which I tried, and which was an action for misappropriation or unlawful expenditures of moneys, against several corporate directors, pending the action, the plaintiff accepted a sum of money from some of the directors, and agreed to dismiss the action as to them. It was argued that the agreement was merely an agreement *not to sue.* But the court sustained me in holding that the instrument disclosed very definitely that it was the intention of the parties thereto to settle fully, compromise, and dismiss the cause of action sued on, as to certain defendants. The dismissal, the court held, was on the merits and was intended to settle the differences and obligations between the parties, growing out of the cause of action set forth in the complaint.

■ Ordinarily, a *mere* dismissal against one of several defendants, or the dismissal of a cause of action against one or several joint tort-feasors will not *release* the others. See Johnson v. Pickwick Stages System, supra. The reason why we require more is that where the right of action arises out of the acts of several persons, or several persons are related to the same act, or several persons are joint tort-feasors, the plaintiff has the choice of determining which of the joint actors or tort-feasors he shall sue. He may sue all; he may sue some; or he may sue one of them only. If he does not sue all, the other defendants cannot complain. However, if there is a dismissal, as to one or more, in the form of a *retraxit,* it affects the cause of action as to the others. If it is made under circumstances which indicate clearly that it was the intention to settle fully and compromise the entire controversy, then it applies to, and releases, all joint tort-feasors, whether sued or not.

The line of demarcation is sometimes very thin. Yet, I believe, that the cases furnish illustrations of contracts ·which, although the parties themselves sought to denominate "Covenants not to Sue," were held, nevertheless, in the light of the circumstances under which they were made, of their purported meaning, and of what was actually done, to be releases. And this although the word "release" was never actually used in the text.

The best statement of the law in California is contained in Chetwood v. California National Bank, supra, in which a judgment was involved, awarded against several persons, and arising out of a tort. Some of the persons paid a sum of money and the cause was dismissed as to them. The question with which the court was confronted was whether the payment was made upon the judgment, as the release was, doubtless, in consideration of that payment.

The Supreme Court of California, Mr. Justice Henshaw writing the opinion, made this statement:

"Where a joint action is brought against two or more for trespass done, and all are held liable, the judgment must be for joint damages. All legal consequences of a joint judgment must follow. Each is liable for all the damage which the plaintiff has sustained, without regard to their different degrees of culpability, and a release to one discharges all.

"The plaintiff in this case, by accepting $27,500 from the two defendants for and on account of the joint trespass of the three, and by releasing them, has released his claim against the third. In Urton v. Price, 57 Cal. 270, an action for personal injuries occasioned by the explosion of chemicals was brought against Price, the demonstrator at a lecture. The charge was negligence. Thereupon plaintiff added the Mechanics' Institute, under whose direction the lecture was given, as a defendant. Subsequently plaintiff filed a stipulation discontinuing and dismissing the action as to the defendant the Mechanics' Institute. Thereafter the defendant Price filed an amended answer, setting forth that, after the commencement of the action, plaintiff had accepted $500 from the Mechanics' Institute for and on account of the injury he had received, and had dismissed the suit as to the institute. Judgment was entered in the trial court that plaintiff had received satisfaction for his injuries, and, upon appeal to this court, it was held that this

constituted a release of plaintiff's claim against Price.

"In Tompkins v. Clay Street Hill R. R. Co., 66 Cal. 163, 4 P. [1165] 1167, plaintiff sued the Sutter Street Railroad Company and the Clay Street Hill Railroad Company for damages for personal injury, alleging that it was occasioned by their joint negligence. The court refused to instruct the jury as follows:

" 'The defendant Clay Street Hill Railroad Company, by its supplemental answer, avers that plaintiff has released and discharged the Sutter Street Railroad Company. If you find from the evidence that the plaintiff has received any sum of money whatever from the defendant Sutter Street Railroad Company, as compensation for the injuries received by her, and has released and discharged the defendant the Sutter Street Railroad Company from all claim for damages arising out of this action, then you are instructed to bring in your verdict for the defendant the Clay Street Hill Railroad Company.' "

The court reversed the judgment on the ground that the trial court should have given this instruction, because a question of fact was involved, i. e., whether the circumstances showed a release.

There is another significant paragraph in this opinion:

"While plaintiff may sue one or all of joint tort feasors, and while he may maintain separate actions against them, and cause separate judgments to be entered in such actions, he can have but one satisfaction. Once paid for the injury he has suffered, by any one of the joint tort feasors, his right to proceed further against the others is at an end. Where several joint feasors have been sued in a single action, a retraxit of the cause of action in favor of one of them operates to release them all. The reason is quite obvious. *By his withdrawal, plaintiff announces that he has received satisfaction for the injury complained of, and it would be unjust that he should be allowed double payment for the single wrong.* It matters not either whether the payment was in a large or in a small amount. If it be accepted in satisfaction of the cause of action against the one, it is in law, a satisfaction of the claim against them all." (Italics added.)

In Bee v. Cooper, supra, we had a different application of the same principle.

Bogardus v. O'Dea, supra, was a *retraxit* case, in which a person, who had been named as a defendant but had not been served, paid a sum of money, after which a retraxit of the action was filed as to him. The court held that the retraxit was a release of all the defendants joining in the commission of the particular act, saying:

"The original complaint set up two distinct causes of action without attempting to state them separately. One of the causes of action so pleaded was for damages alleged to have been suffered by appellant as a result of the 'false and fraudulent representation and return' as to service of summons upon him, made, as the complaint alleged, 'with intent to deceive in order to obtain said default judgment.' According to the allegations of the original complaint, all three of the defendants joined in the commission of the tort-giving rise to this cause of action, and hence a retraxit *of the cause of action in favor of any of them operated as as a release of all of them.*" (Italics added.)

Flynn v. Manson, 19 Cal.App. 400, 126 P. 181, 183, is another case in which the court held that the dismissal was the result of the settlement of the controversy, and released all the defendants, despite the fact that the contract contained a proviso to the effect that it was not the intention to release "*anybody* else" from liability. Said the court:

"Such a provision, says the court in Gunther v. Lee, 45 Md. 60, 24 Am.Rep. 504, 'is simply void as being repugnant to the legal effect and operation of the release itself.' So in Seither v. Philadelphia Traction Co., 125 Pa. 397, 17 A. 338, 4 L.R.A. 54, 11 Am.St.Rep. 905, where a reservation in a release similar to the one here was considered, the court said that the plaintiff having received one satisfaction was not entitled to a second. Each joint tortfeasor 'being liable to the extent of the injury done by all, it follows as a necessary consequence that satisfaction made by one for his liability operates as a satisfaction for the whole wrong and as a discharge of all concerned. One defendant cannot make an agreement impairing the legal rights of his codefendants, nor cede to the plaintiff the privilege these defendants had of availing themselves of any matter forming a legal defense to the action.' "

Counsel for the plaintiffs rely strongly on City of Chicago v. Babcock, supra. That case involved a true covenant not to sue. It was contained in a writing which had been filed after a particular person had

been named a defendant in a joint action against him and others. The agreement left no room for any doubt as to its purpose, as is evident from this brief excerpt from the opinion:

"It appears from the evidence that appellee brought two suits to recover damages for the injuries that she had received,—one the suit at bar against the appellant city, and the other a suit against Guiseppe LeCardi, owner of the building and premises connected with which were the opening and trapdoor above mentioned, and Ellen Gaynor, tenant of the entire building; that afterwards LeCardi paid to the attorneys of appellee the sum of $150, and that the larger portion of this was applied by said attorneys in paying costs of the last-mentioned suit, and other expenses and charges, and some of $30 or $40 handed to and received by appellee; that at the time of the payment of the $150 a writing was executed and delivered to the agent of LeCardi, which read as follows:

"'State of Illinois, County of Cook. It is *hereby agreed that no action shall be begun against Joseph LeCardi by reason of any matters existing at this date, by the undersigned.* Given for good consideration. Emma Babcock. By Pease & Williams, Attorneys for Plaintiff. Chicago, March 11, 1889; and that afterwards an order was entered in the suit of Babcock v. LeCardi and Gaynor, showing that, on motion of the plaintiff, by her attorney, the suit was dismissed out of court at the cost of the plaintiff." (Italics added.)

When we come to the case at bar, we are confronted with these facts: On September 27, 1935, an action was begun by the plaintiffs herein against several defendants, including the Southern Pacific Company. The action was entitled "An action for damages for wrongful death," and was instituted in the superior court of the state of California in and for the county of Los Angeles. An amended complaint was filed in the action while it was pending in the state court, on November 22, 1935. In both of these complaints, the Southern Pacific Company is charged, along with others, with responsibility for the injuries of which the plaintiffs complain, the death of Jenkins. After the removal of the cause to this court, a second amended complaint was filed, which I have already summarized. The Southern Pacific Company and one of its employees, Dolsen, were made parties defendant to the first cause of action, it being alleged that they par-ticipated in the joint tort of which the plaintiffs complained. As already stated, the first cause of action is joint, and damages are claimed jointly against all the defendants. The second cause of action is against the defendant A. J. Kash, and is a restatement of the first cause of action, merely in terms of assault, damages being claimed against him alone. *But it is the same tort.* There is no attempt in the first cause of action to separate the liability of the parties defendant or to apportion the damages separately. On the motion to remand, it was insisted very earnestly that there was no separability in the cause of action, and that for that reason, and because one of the employees was a resident of the state of California, the foreign corporation (the Pullman Company) had no right to remove the cause to this court.

On December 28, 1936, there was filed in this court a dismissal of the cause of action against the Southern Pacific Company and Fred M. Dolsen.

The dismissal gathers significance from the fact that it was made pursuant to an agreement entered into, and which was submitted to the superior court in the matter of the estate of Robert L. Jenkins, deceased. This agreement is drawn very skillfully, the object being to bring it, if possible, within the exception and have it treated as a covenant not to sue. It is entitled "Covenant Not to Sue." But as I read it, even without referring to the petition and order entered on it, it uses every word of release, except the actual word "release." In fact, it uses the terminology which we ordinarily use in all forms of releases, including the phrase: "From the beginning of the world to the present time."

We analyze it in detail.

It begins by stating that, for and in consideration of the sum of $2,500 paid by the Southern Pacific Company, Mrs. Garnett V. Jenkins and Robert W. Jenkins, by Mrs. Garnett V. Jenkins, his guardian ad litem, *"for their heirs, executors, administrators and assigns"*—words which have no place in a personal covenant not to sue. The form used is the usual one used in California in the preparation of releases. It follows almost the exact terminology of the release, except that there is an effort made not to use the word "release." Here is the usual form of release of all claims:

"Know all men by these presents that I, ————, of the county of ————, state of ————, for and in consideration of the sum of ———— dollars ($————), gold coin of the United States of· America, to me in in hand paid by ————, of the county of ————, state aforesaid, have released and forever discharged, and by these presents do, for myself, my heirs, executors, and administrators, release and forever discharge, the said ————, his heirs, executors, and administrators, of and from all and all manner of actions and causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law or in equity, which against the said ———— I ever had, or now have, or which I, or my heirs, executors, or administrators, hereafter can, shall, or may have, for, upon or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents.

"In witness whereof, I have hereunto set my hand this ———— day of ————, 19—— (Signature)." (Church's Forms of Law (1911), 1079.)

In the instant case there is a settlement of the controversy, not only for the plaintiffs, but for their heirs, executors, administrators, and assigns. What do the plaintiffs agree to do for the $2,500? To refrain from *"instituting, pressing,* or in any way, *aiding any claim, demand, action or cause of action* for damages, costs, loss of service, expenses or compensation" for and on account of the death of Robert L. Jenkins. This is not the abandonment of a particular action or suit. It is not (as was the case in City of Chicago v. Babcock, supra) an agreement that "no action shall be begun," by reason of certain acts. Here we have an agreement *never* to institute; *never* to pursue; *never to press,* or in any way *aid,* in "any claim, demand, action, or cause of action, for damages, costs, loss of service, expense or compensation for, on account of, or *in any way growing out of,* or hereafter to grow out of, the injury or death of Robert L. Jenkins, deceased" (date of death given), "while in the employ of the said Southern Pacific Company as a passenger conductor."

What kind of claim do the· plaintiffs agree not to institute an action for, not to pursue, press, or aid? After describing the employment of the· deceased, the instru-

ment particularizes by giving the trip he was on, and states that "the said Jenkins claimed to have received an injury by reason of a blow struck by A. J. Kash," and "it is alleged that Jenkins died as a result of said blow by the said A. J. Kash on the 29th day of March, 1935, or from any other injury or cause."

Clearly, this is *not* a covenant not to sue. It is a release, and an agreement not to press any demand or cause of action for damages resulting by reason of the blow or from any other injury or cause while the deceased was in the employ of the Southern Pacific Company, or otherwise. But the instrument does not stop here. It goes on to state, *"Which cause or causes are mentioned in that certain action entitled,"* giving the title of the present action. In other words, the plaintiffs release *by reason of the injury arising from the cause of action set forth in the particular complaint.* And not content with this, they state, in the usual words of all demands, "from any cause or causes whether set forth in said complaint as aforesaid or otherwise, or at any time from the beginning of the word."

Having released the particular cause of action, they thus release also any other cause of action which might be based upon the facts stated or otherwise, *or at any time,* from the beginning of the world to the date of the instrument. Then they reserve all rights that they have "or either of them has or may hereafter have, against any other person or persons, firms or corporations because of the death of said Robert L. Jenkins, deceased."

Having abandoned, as to the Southern Pacific Company and Dolsen, the cause of action already pending, and any other cause of action by reason of the death of Robert L. Jenkins, they seek to reserve them as to other persons.

Then follows in another paragraph:

"It is further agreed that the undersigned, Mrs. Garnett V. Jenkins and Robert W. Jenkins, by Mrs. Garnett V. Jenkins, his guardian ad litem, and the Southern Pacific Company, a corporation, do not in any manner or respect *waive or relinquish any claim or claims* against any other person, persons, firms, or corporations than are herein specifically named."

Why do they use the words *"waive or relinquish any claims or claim against any other person, persons, firms or corporations than are herein specifically named,"* unless

it was the clear intent of the instrument to *have a waiver and release* as to persons named in it. When one says: "I do not waive or relinquish any right against *others*," in an instrument, and the instrument recites that money was received for abandoning a lawsuit, it is clear that, whether the word "release" is used or not, one has already "waived" and "relinquished." To emphasize this interpretation, the instrument, after using the words "any other person, persons, firms or corporations," adds "than are herein specifically named." If it is a covenant not to sue, and there is no waiver or relinquishment of any cause of action arising from the death of the party, why do they say: *"I do not waive as to any other person"?*

Light is thrown upon the meaning of the instrument if we refer to the petition for its confirmation by the administratrix and the order of the court confirming it. Under the law of California, if an action is instituted for the benefit of an estate in probate and is compromised, the probate court must approve the compromise. Otherwise, the executor might be held liable for loss to the estate. See California Probate Code, § 578, as amended by St.1935, p. 1971, and the following cases decided under section 1588 of the California Code Civil Procedure, upon which the new section is based: Hartigan v. Southern Pacific Co. (1890) 86 Cal. 142, 24 P. 851; Taylor v. Sanson (1914) 24 Cal.App. 515, 141 P. 1060; In re Estate of McAllister (1933) 134 Cal.App. 349, 25 P.(2d) 507. Such approval was all the more important in a case of this character as under California law only a single joint cause of action was given to (and might be brought by) the heirs or personal representatives by reason of the death of Jenkins. A recovery (or a settlement) by the executrix barred the heirs. California Code Civil Procedure, § 377, as amended by St. 1935, p. 460; Hartigan v. Southern Pacific Co., supra; Robinson v. Western States Gas & Electric Co. (1920) 184 Cal. 401, 194 P. 39.

But this petition is not worded as a petition for the approval of a compromise. It seeks permission to sign the covenant not to sue. It sets forth that an action was instituted on September 28, 1935, predicated upon an injury claimed to have been received by the husband of the executrix while he was a railroad conductor on the train of the defendant, the Southern Pacific Company, caused by a passenger on said train who was drunk and disorderly, and struck the deceased, from which petitioner claimed the deceased died on April 19, 1935; that the cause was removed to the District Court of the United States, Southern District of California, Central Division, upon application of the defendants and is now pending there; that the petitioner did on December 21, 1936, enter into a covenant not to sue with the Southern Pacific Company, defendant, a copy of which is attached to and made a part of the petition, for a consideration of $2,500. Then follows the statement:

"That your petitioner is advised, and so believes, that there is a question as to whether or not recovery could be had against the Southern Pacific Company, and, therefore, your petitioner verily believes that if a recovery cannot be had the estate would be put to great expense in the trial of said cause against the Southern Pacific Company; that your petitioner has been advised, and so believes, that it would be of considerable saving to the estate to be permitted to enter into said covenant not to sue with said Southern Pacific Company, and respectfully requests the court that said covenant not to sue entered into between said defendant, Southern Pacific Company, and your petitioner be confirmed."

The executrix *had already entered* into the contract or agreement not to sue, and she now seeks a confirmation of her act.

Then follows the prayer:

"Wherefore your petitioner prays that the court make an order confirming said covenant not to sue and permitting the petitioner to *dismiss said cause* as against the Southern Pacific Company."

It does not say to dismiss the suit, or to dismiss the action. It seeks to dismiss "the cause" of action. That petition was duly signed and verified by Mrs. Garnett V. Jenkins.

The action of the court on the petition throws added light on the matter. After a formal recital of the facts relating to the filing of the petition, the order says:

"It appearing to the court that it will be for the benefit of the estate of confirm said covenant not to sue and to permit said administratrix *to dismiss said cause of action* as against the Southern Pacific Company, a corporation:

"It Is Hereby Ordered that the covenant not to sue entered into by and between Mrs. Garnett V. Jenkins, administratrix,

and the Southern Pacific Company, a corporation, be and is hereby confirmed and that she be permitted *to dismiss said cause of action* as against the Southern Pacific Company, a corporation." .(Italics added.)

This order interpreted correctly the effect of the instrument of settlement. ' I am quite certain that the·Southern Pacific Company, and its attorneys, would not have paid the sum of $2,500 if they had not thought they were receiving a release. They would not pay $2,500 to buy another lawsuit. The dismissal was signed on December 24, approved by me and filed on December 28, 1936. ·

 An instrument must be given the effect it bears on its face. It is true (as was the case in Kincheloe v. Retail Credit Company, supra) that when an instrument states specifically that it is a covenant not to sue, the court cannot interpret it in any other way, *and read into it words of release.* But the converse is also true, that is, if *the instrument shows on its face that* it is, in truth, a release of a particular claim, and the claim is identified, it amounts to a general release of the cause of action, although the word "release" is not actually used. Here, three other verbs are used which, actually, achieve a release, *to wit, refrain from instituting, pressing, or in any way aiding.* And this release is intended to affect any other· cause of action which may exist from the beginning of the world until the present time.

 It is evident that when this is the result aimed at, the mere fact that the parties entitle an instrument of settlement a "Covenant Not to Sue" means nothing. The instrument must be given the effect it bears. And when we interpret this instrument, in the light of the circumstances, and in the light of the fact that the cause of action was pending and coming on for trial; that a settlement was made; and $2,500 paid; that a dismissal was had; that the probate court approved and confirmed it, and authorized the settlement and the dismissal of the cause of action, we are confronted with a release.

To give to such instrument, under such circumstances, the effect of à mere covenant not to sue, would be allowing form to take the place of substance, and words the place of acts.

I think the instrument under consideration has more of the earmarks of a release than the one which was before me in Bee v. Cooper, supra, and comes clearly

within the principles laid down in that case, and the other cases discussed. While called a "Covenant Not to Sue," it is, in reality, a settlement of the pending lawsuit, in consideratiòn of its dismissal and the release of the cause of action.

It follows that the plea in bar interposed by the defendants, and which, by consent of counsel, ·was tried before the merits should be sustained.

So ordered. And on the basis of the evidence presented on the plea in bar, the action will be dismissed as to all the remaining defendants upon the ground that the plaintiffs, before the trial, have settled the controversy and cause of action with two of the codefendants, who were two of the joint tort-feasors, and that this settlement and the subsequent dismissal, and the payment of a substantial sum of money, to wit, $2,500, amounted to a settlement of the entire controversy and a release of the cause of action as to all the defendants. Exceptions will be noted. The findings will be limited to the plea in bar. No findings will be made on the merits.