[Civ. No. 12492. Second Appellate District, Division Two.—June 28, 1940.]

RAY T. KEY et al., Respondents, v. WILLIAM CALDWELL et al., Defendants; R. B. JENKINS, Appellant.

Noel B. Martin for Appellant.

Reynolds & Painter, Thomas Reynolds, Grant G. Calhoun and Ray H. Kinnison for Respondents.

WOOD, J.—This action was commenced by plaintiffs, who are husband and wife, for the purpose of recovering damages for injuries to Mrs. Key resulting from the negligence of ap-

pellant, a physician and surgeon, in performing a Caesarean operation upon Mrs. Key. Several defendants were named in the complaint but the action proceeded to judgment against appellant alone. The appeal is from a judgment in favor of plaintiffs.

Plaintiffs were members of the Better Health Foundation, a group health organization, which in consideration of monthly dues agreed to furnish them with necessary surgical and obstetrical services in connection with the anticipated birth of Mrs. Key's child. Plaintiffs were referred by the Foundation to a clinic and hospital headed by appellant for prenatal and obstetrical services. On August 31, 1938, after labor had started, Mrs. Key went to the hospital, where she was examined by appellant. Because of complications resulting from her poor physical condition appellant decided that Mrs. Key would be unable to have a normal delivery and that a Caesarean operation was necessary. Appellant commenced the operation and as it progressed it became apparent that the patient was a poor surgical or anaesthetic risk and that it was essential that the operation be completed in the shortest possible time. Appellant therefore completed the operation as rapidly as possible. In the course of the operation many laparotomy sponges were used for the purpose of walling off various organs of the patient's body from the operating field. The nurses assisting him made two sponge counts at his request and announced them to be correct, thus indicating to appellant that all sponges used in the operation had been removed from the patient's body. This conclusion was found to be erroneous when, approximately five weeks later, it was discovered that one of the sponges used in the operation had not been removed from Mrs. Key's body and that as a result she had suffered certain injuries. This interring of a laparotomy sponge in Mrs. Key's abdomen constitutes the alleged negligent act out of which the present action arose.

William Caldwell was originally named as a defendant and an alleged partner of appellant but prior to trial the action was dismissed as to him with prejudice. Caldwell, who had filed a cross-complaint against plaintiffs based upon their failure to pay dues to the Foundation, dismissed his cross-complaint with prejudice. Following the dismissal of the action as to Caldwell appellant made a motion for permis-

sion to file a supplemental defense in the nature of a *retraxit*, which was denied. During the course of the trial the motion for leave to interpose the supplemental defense was renewed and again denied. It is now contended by appellant that the court abused its discretion in refusing to permit him to interpose such defense. In support of his position it is urged by appellant that the dismissal with prejudice as to defendant Caldwell amounted to a *retraxit*, the result of which was to release appellant as a joint tort-feasor from further liability to plaintiffs. ■ It is settled that before a voluntary dismissal as to one defendant will operate as a release of a codefendant it must appear that the defendants are joint tort-feasors and that plaintiff has received some satisfaction for such dismissal. (*Shea* v. *City of San Bernardino,* 7 Cal. (2d) 688 [62 Pac. (2d) 365] ; *Commercial Transfer Inc.* v. *Daigh & Stewart,* 33 Cal. App. (2d) 370 [91 Pac. (2d) 951] ; *Barsh* v. *Metro-Goldwyn-Mayer,* 32 Cal. App. (2d) 556, 558 [90 Pac. (2d) 371].)

■ Appellant's contention cannot be sustained for the reason that there is no evidence that appellant and Caldwell were joint tort-feasors and for the further reason that there is no evidence that plaintiffs received any satisfaction for the dismissal of the action. Although it is true that appellant and defendant Caldwell were alleged to be partners this allegation was denied by appellant in his answer. In connection with his claim of *retraxit* appellant offered to prove that defendant Caldwell, who operated the Better Health Foundation, had an agreement with appellant under which the latter was obligated to furnish obstetrical and surgical services to members of the Foundation. In making such offer of proof the attorney for appellant stated: ''I will say as a prelude that I do not understand that relationship to be either a partnership nor a joint venture.'' Caldwell was not a physician and did not participate in any manner in the actual operation which was performed by appellant. The record is silent as to any master and servant relationship between Caldwell and appellant, so that the doctrine of *respondeat superior* is not applicable. The situation thus presented falls far short of showing any such concert of action as would be required to render appellant and Caldwell liable as joint tort-feasors. (*Weinberg Co.* v. *Bilby,* 185 Cal. 87 [196 Pac. 25].)

■ The record fails even to suggest that plaintiffs received any satisfaction for the dismissal. Clearly, unless some satisfaction has been received there can be no *retraxit.* (*Bee* v. *Cooper,* 217 Cal. 96 [17 Pac. (2d) 740].) It is urged by appellant that the dismissal of Caldwell's cross-complaint constituted the satisfaction for the dismissal of plaintiffs' action as to Caldwell. It must be remembered, however, that it is the fact of compensation for the alleged injury that operates as a release of other joint tort-feasors, not merely the dismissal of the action as to one of them without satisfaction having been given. (*Commercial Transfer Inc.* v. *Daigh & Stewart, supra.*) Since it does not appear that plaintiffs received any compensation from Caldwell, the bare fact of the dismissal cannot be construed as a satisfaction of plaintiffs' claims. If we were to hold otherwise the result would be that a plaintiff in an action against several alleged joint tort-feasors could not dismiss the action against one of the defendants who was innocent of any wrong without forfeiting his right to recover from the remaining defendants. In *Commercial Transfer Inc.* v. *Daigh & Stewart, supra,* at page 373 it is said: ''To hold that, where an action is brought against several defendants alleging a joint tort-feasance . . . it is necessary for the plaintiff to continue to prosecute his action *falso clamore* against an innocent defendant after it appears from the evidence that he is not liable, in order that the guilty wrongdoer may not escape, would indeed be to sanctify form at the sacrifice of substance.''

■ It is contended by appellant that there is no evidence to support the finding that he was negligent. It is conceded by both parties that the doctrine of *res ipsa loquitur,* ''where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care'', is applicable to the present case. (*Ales* v. *Ryan,* 8 Cal. (2d) 82, 95 [64 Pac. (2d) 409, 415].) Appellant urges, however, that the inference of negligence arising from the doctrine was overcome by positive and uncontroverted proof. From the evidence introduced by appellant it appears that after the commencement of the operation it developed that the patient ''did not take

a good anaesthetic and she started to go bad'' so that in appellant's opinion she became a poor surgical risk. Recognizing that speed was imperative if the lives of the mother and child were to be saved appellant proceeded with the operation as swiftly as possible, and when suturing the incision made in the uterus he directed the nurses to make a count of the sponges which he had removed from the operating field. Upon being informed by the nurses that the sponge count was correct, appellant completed the operation by closing the incision which had been made in the abdomen and at this time again demanded a sponge count and was again informed that such count was correct. All of the sponges which were used to wall off the operating field were personally placed by appellant and were with one exception removed by him. Appellant testified that the sponge which he failed to remove was one which he had used for the purpose of preventing the transverse colon from sagging into the operating field. He further stated that it was essential in every Caesarean operation to use a similar sponge for this purpose. Appellant testified that he was familiar with the usual and ordinary practice of surgeons in performing Caesarean operations in the same locality and that in performing this operation he did not depart from such usual and ordinary practice. He also testified that under all the circumstances it was the usual and ordinary practice of physicians to rely upon the sponge count of the nurses.

Appellant's argument is that since there was no evidence to establish a departure from approved medical practice and, on the contrary, it was established by his own testimony that he did follow the usual and ordinary practice in performing this operation the inference of negligence raised by the doctrine of *res ipsa loquitur* was definitely rebutted. It is further urged that what is or is not proper medical practice can only be established by expert testimony which, when not conflicting, is conclusive. Although appellant relies upon rules which are applicable in many cases of malpractice, it must be held that the finding of the trial court that defendant was negligent, in view of the facts of the present case, is supported by the evidence. It has been held that '' . . . the failure to remove a sponge from the abdomen of a patient is negligence of the ordinary type and that it does not involve knowledge of materia medica or surgery but that it belongs

to that class of mental lapses which frequently occur in the usual routine of business and commerce, and in the multitude of commonplace affairs which come within the group of ordinary actionable negligence. . . . General negligence cannot be excused on the ground that others in the same locality practice the same kind of negligence.'' (*Ales* v. *Ryan, supra.*) Appellant's testimony that he followed the usual and ordinary practice in performing the operation does not compel a finding that the inference of negligence arising from the fact that he failed to remove one of the sponges was rebutted. The question whether such inference has been rebutted is ordinarily for the determination of the trial court.

The question before us for determination is whether the record discloses support for the finding that appellant did not use reasonable care and skill. Such finding is not rendered ineffective by proof that appellant followed the practice and methods ordinarily used by surgeons in the same locality. In *Ales* v. *Ryan, supra,* at page 103, the court quotes with approval from *Davis* v. *Kerr,* 239 Pa. 351 [86 Atl. 1007, 46 L. R. A. (N. S.) 611] : '' . . . Here the surgeon had reached the conclusion that he had removed all the sponges— a mistaken conclusion, but verified by the nurses' count. In reaching his conclusion, did he exercise ordinary skill? We see nothing in the evidence to warrant the inference that he did not; but, on the other hand, we find nothing to warrant the inference that he did, which is far more important, since the burden of showing care was upon him. Why was a foreign substance left in the parts, which the operating surgeon should have removed? It was for him to acquit himself of negligence with respect to it. The sponge escaped his observation. Why? Was it so hidden and concealed that reasonable care on his part would not have disclosed it, or were conditions such that, in his professional judgment, further exploration by him for sponges would have endangered the safety of the patient? In a word, did he do all that reasonable care and skill would require? Except as one or the other of these questions can be answered affirmatively from the evidence, the law will presume to the contrary, and attribute the unfortunate consequences to his contributing negligence.'' In the case now before us there is no evidence that appellant made any attempt to verify by exploration in the patient's abdominal cavity the sponge count which the nurses had an-

nounced as being correct, nor was it shown that such exploration, if made, would have endangered the patient's safety. It does not appear that the sponge was so concealed that reasonable care on his part would not have disclosed it. On the contrary, appellant's own testimony lends strength to the inference of negligence arising from the application of the doctrine of *res ipsa loquitur*. His testimony was that the sponge which had been interred in the patient's abdomen was of the type used by him in every Caesarean operation and was one which was used in every such operation for the same purpose and placed in the same position in the abdominal cavity. It thus appears that the sponge in question was of the ordinary type, routinely placed in the same position in every operation and no compelling explanation is offered for his failure to remove it. The trial court was justified in drawing the inference from the facts proved that appellant did not do all that reasonable care and skill would require.

Appellant rests his case entirely upon the testimony that in completing the operation as speedily as possible and in relying upon the sponge count by the nurses he was following the usual and ordinary practice of other physicians in the same locality. It has been held that a surgeon cannot relieve himself of liability by proof of a custom or practice among surgeons requiring the nurses to count the sponges used in an operation. In *Ales* v. *Ryan, supra,* p. 105, the court quotes with approval the rule set forth in 21 Ruling Case Law, 338, to the effect that ''surgeons cannot relieve themselves from liability for injury to a patient caused by leaving sponges in a wound after operation, by the adoption of a rule requiring the attendant nurse to count the sponges used and removed, and relying on that rule as conclusive that sponges have been accounted for''. Since the operation was performed under the immediate supervision and direction of appellant he was charged with the responsibility of determining that all sponges were removed from the operating field before the incision was closed.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 23, 1940, and an application

by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1940. Edmonds, J., and Houser, J., voted for a hearing.