[Civ. No. 24559.   Second Dist., Div. Three.   Feb. 9, 1961.]

AMALIA APODACA et al., Appellants, v. EARL W. HAM-
ILTON et al., Defendants; CONSOLIDATED ROCK
PRODUCTS COMPANY (a Corporation), Respondent.

Virgil R. Wells for Appellants.

Schell & Delamer, Rodney F. Williams and Henry F.
Walker for Respondent.

BISHOP, J. pro tem.*—The plaintiffs have appealed from the judgment that they take nothing from the defendant Consolidated Rock Products Company (hereinafter referred to as the "Rock Company"). The plaintiffs have already taken $14,369.75 from Earl W. Hamilton, formerly a defendant, as the result of a settlement with him, and it is on the theory that plaintiffs' release of all claims against this former defendant served as a release of their claims against the defendant Rock Company, that the judgment denying the plaintiffs further recovery was based. We are affirming the judgment.

Two crucial questions are before us: (1) Did the release of all claims against Hamilton put an end to plaintiffs' right of recovery against the defendant Rock Company? and (2) was the trial court's conclusion proper that it could give an affirmative answer to the first question as a matter of law; that there was no question of fact involved to be submitted to a jury?

These questions are set in a background that merits some attention. Several defendants were named in the original complaint, in addition to those fictitiously referred to; among them we find Earl W. Hamilton but not Consolidated Rock Products Company. The latter's name first appeared by an amendment, and thereafter it appeared in the first and second amended complaints, along with that of Hamilton and others. Each of the first two amended complaints sought recovery of over $300,000 because of the death of one Otilio Apodaca, the husband of one of the plaintiffs and the father of the two minors appearing by their mother as their guardian *ad litem*. Otilio's death was brought about by the collision of a dump truck with an automobile in which he was a passenger. The dump truck, it was alleged, was owned by defendant Hamilton and was being driven by him; the defendant Consolidated Rock Products Company negligently and unlawfully loaded the dump truck with sand, beyond the legal limit prescribed by section 705, subdivision (b), of the Vehicle Code, as it read in 1956, so affecting its braking power, that driven as it was by Hamilton, negligently, it failed to stop at a red light and caused the fatal accident. These catch-all allegations also appeared: " 'at all times mentioned, each of the defendants was the agent and employee of the remaining defendants and was at all times acting within the purpose and

---

*Assigned by Chairman of Judicial Council.

scope of said agency and employment.' '' In the second amended complaint a third count appeared in which, by reference, all the previous allegations were repeated and then it was added that all the defendants were engaged in a joint venture; that at the time of the accident Hamilton was hauling rock and gravel for the benefit of all.

Without looking at the contents of the third amended complaint, at this point, we note that it was filed December 30, 1958, naming only the Rock Company as a defendant. The Rock Company filed an answer and then an amendment to its answer in which, among other affirmative defenses, it set up two that interest us, the fourth and fifth separate defenses. In them the defendant alleged that, in consideration of the sum of $14,369.73, all the plaintiffs, some time before the third amended complaint was filed, executed releases of all claims ''for and on behalf of Earl W. Hamilton'' and filed dismissals with prejudice as to him.

When the case came on for trial, with prospective jurors ready for examination and selection, the trial judge and counsel went into executive session, the outcome of which was to enter upon the trial of the affirmative defenses first, as authorized under section 597, Code of Civil Procedure. The trial judge took the position, quite properly (18 Cal.Jur.2d 471) that he could take judicial notice of the matters in the file of the instant case. To make doubly sure, however, various portions of the file were introduced into evidence. Among other things thus before the court was a petition, by the guardian *ad litem*, on behalf of the minor plaintiffs, in which she referred to the fatal auto accident; alleged that the defendant Hamilton was offering to pay, by way of a total settlement, $10,369.73 to her, for her claims, and $2,000 to each minor that she represented; and prayed for an order approving the settlement. The order was made, providing that upon the payment of $4,000 the petitioner was ''authorized and directed to execute and deliver to said [Hamilton] a full, complete, and final release and discharge of and from any and all claims and demands of said minors by reason of the accident.'' It was stipulated that the $14,369.73 was paid; and defendant Hamilton given a release and the action was then dismissed as to him. Based upon the matters of which he took judicial notice, aided by the facts as stipulated, the trial judge concluded that defendant Hamilton had been fully released, and his release relieved the defendant Rock Company as well. At our request the parties have filed with us copies of the

releases, stipulated to be true and correct, and they "release, acquit and forever discharge EARL W. HAMILTON of and from any and all action, causes of action, claims, demands, damages, costs, . . . on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result" from the accident of interest in this case.

With respect to the release given Hamilton the plaintiffs' position was, and is, that it was a jury question whether the release was intended to be a release of all damages claimed (over $300,000) against all defendants, or whether it effected a settlement with defendant Hamilton only. An offer of proof was made that the plaintiff guardian *ad litem* would testify that she settled with Hamilton because it was the best deal she could make with him, but that she never intended to release the other defendants. In support of plaintiffs' position, that they should have been permitted to prove their intent, they cite *Gerald* v. *San Francisco Unified School District* (1953), 121 Cal.App.2d 761 [264 P.2d 90], in which it was held that it had been an error not to permit the plaintiff to state, as a witness, whether he received money from one defendant in full or only partial satisfaction. In so ruling, the court pointed out, however, that the defendants did not appear to be joint tortfeasors; plaintiffs' claims against the defendant who settled and those remaining "were predicated upon the violation of distinct and separate duties owed by them respectively." It followed, the court pointed out, that the release of one "did not release the others unless full compensation was made for plaintiffs' injuries." (P. 764.)

Another case is helpful, just at this point because of its sharp contrast. In *Bee* v. *Cooper* (1932), 217 Cal. 96 [17 P.2d 740], an action had been brought by some stockholders of a corporation against seven directors who, it was alleged, had "conceived and undertook to carry out a plan" to deprive their company of certain of its assets. The plaintiff entered into a settlement agreement with five of the defendants, of which the court says: "A reading of the instrument very definitely discloses that it was the intention of the parties thereto to fully settle, compromise and dismiss the cause of action here sued on, in so far as certain defendants are concerned." (P. 99.) Among other provisions in the settlement agreement we find this (217 Cal. 96, 100 [17 P.2d 742]): " ' . . . nothing herein contained shall in any manner prejudice the prosecution of said pending action or of any other action against any other

defendant herein or against any other person who may be liable on account of the matters therein complained of.' "

Certain quotations from the court's opinion are apt if, as in that case, ours proves to be one of joint tortfeasors. "It is well settled that a release of one of two or more joint tort-feasors operates as a release of all. [Cases cited.]" Then, speaking of the attempt, in the settlement, to save the action against the remaining defendants, the court said (217 Cal. 96, 100 [17 P.2d 742]) : "This purported reservation of plaintiffs' rights against the remaining defendants herein is nugatory and of no effect. . . . Such a provision is void as being repugnant to the legal effect and operation of the release itself."

Whatever fault may be found with it, we do not question that, except as it may have been modified by section 877, Code of Civil Procedure, "The rule in this state, applied in many cases, is that a release of one joint tort feasor is a release of all." (*Pellett* v. *Sonotone Corp.* (1945), 26 Cal.2d 705, 710-711 [160 P.2d 783, 786, 160 A.L.R. 863] ; see also *Lamoreux* v. *San Diego etc. Ry. Co.* (1957), 48 Cal.2d 617, 624 [311 P.2d 1, 4-5].) Every cause of action involved in this case accrued some time before January 1, 1958, so the rule remained unaffected by the adoption of section 877, due to the positive provision of section 880, Code of Civil Procedure. We, therefore, follow the established rule, and, whatever may have been the intention of the plaintiffs in executing a release of defendant Hamilton, the effect of the release was to release the defendant Rock Company, provided that the two were joint tortfeasors.

■ For the purposes of this case we are accepting the tests prescribed, to determine whether or not defendants are joint tortfeasors, that we find in *Alexander* v. *Hammarberg* (1951), 103 Cal.App.2d 872, 879 [230 P.2d 399, 404] : "To constitute the parties joint tort feasors, the following three elements must all exist: ' (1) A concert of action; (2) A unity of purpose or design; (3) Two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others.' " So tested, was the trial court justified in concluding that Hamilton and the Rock Company were joint tortfeasors? It was.

■ The case went to trial on the issues formed by the third amended complaint and defendant Rock Company's answer, as amended. The defendant argues that in their previous pleadings the plaintiffs had alleged facts establishing that the defendants were joint tortfeasors, and that they could

not remove the effect of those facts by omitting them. This rule governs at times, no doubt, but the plaintiff should not be held to it in this case where after pleading the two contradictory theories, that each defendant was the employer and the employee of the others, the plaintiffs discovered the real facts, through the taking of a deposition, that Hamilton was an independent contractor, serving the defendant Rock Company. Under the circumstances, the erroneous former allegations may properly be abandoned in a new pleading. (*Lamoreux* v. *San Diego etc. Ry. Co., supra,* 48 Cal.2d 617, 628 [311 P.2d 1, 4-5].)

Was the cause of action shown by the third amended complaint one that had involved two joint tortfeasors, one of whom had been released? If we gave a negative answer to this question, it would afford only momentary comfort to the plaintiffs, for it would be based on the premise their last pleading states no cause of action at all. It does state that the defendant Rock Company negligently and unlawfully overloaded the dump truck of the released defendant Hamilton, with the result it adversely affected its braking power, and that at all times Hamilton was driving the truck with the consent, permission and knowledge of the Rock Company, and the fatal accident occurred. We need spend no time pondering whether the act of overloading the dump truck, made unlawful by the provisions of the Vehicle Code, was the proximate cause of the accident, for at the trial the plaintiffs supplied the missing facts that truly reveal their cause of action. In order to fill orders for rock and sand, the Rock Company engaged Hamilton, as an independent contractor, to furnish the dump truck and haul the material to its destination. The Rock Company overloaded a truck that it knew was to be driven on the highways, for the purpose of having it so driven. Hamilton—it was stipulated—knew that his truck was overloaded. While driving, a traffic light turned red, he attempted to stop, but was unable to. Under these circumstances, if the plaintiffs had a cause of action against the Rock Company, in which connection, see *Risley* v. *Lenwell* (1954), 129 Cal.App.2d 608, 622 [277 P.2d 897, 910], it was one in which the defendants Hamilton and Rock Company appeared as joint tortfeasors, united in purpose, each acting with the knowledge and consent of the other.

The plaintiffs would not profit by a reversal. The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.