[Civ. No. 1881.   Third Appellate District.—November 22, 1918.]

AMANDA FIMPLE, as Administratrix, etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant; WILLIAM J. McKNIGHT, Defendant.

NEGLIGENCE—PLEADING.—While, in an action for damages caused by the defendant's negligence, general negligence may be relied on without pleading specific acts of negligence, yet where specific acts of negligence are relied upon for a recovery they must be specially pleaded.

ID.—EMPLOYER AND EMPLOYEE—ACTION FOR DEATH OF THIRD PERSON—EFFECT OF JUDGMENT FOR EMPLOYEE.—If in an action against an employer and an employee for negligently causing the death of a third person, the damage was claimed to have been produced by the employee while he was engaged in discharging his duties as an employee of his codefendant, and the negligence of the employee producing the damage was not personally participated in or aided by some negligent act of the employer wholly independent of and dissociated from the act of the employee, then a verdict acquitting the employee of culpable negligence is necessarily a verdict acquitting the employer also.

ID.—RAILROADS—ACCIDENT AT CROSSING.—Where in an action against a railway company and its engineer for negligently causing the death of a third person at a railroad crossing, the plaintiff claimed that the railway company maintained permanent buildings in close proximity to the track, and that at the time of the accident it had sidetracked and maintained boxcars near the crossing, which obstructed the view of the crossing by those in charge of the locomotive, it was requisite, if the plaintiff intended to rely upon the maintenance of the obstructions as negligence of the railway company, that such negligence should have been specially pleaded, and in such manner as clearly to show that, by reason of such negligence, the railway company itself contributed to the damage complained of.

ID.—OBSTRUCTING VIEW NOT NEGLIGENCE PER SE.—The placing of boxcars and buildings near a crossing so as to obstruct the view is not of itself negligence as to persons traveling over the crossing.

APPEAL from a judgment of the Superior Court of Butte County.   H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

A. F. Jones and George F. Jones, for Appellant.

Guy R. Kennedy and J. D. Peters, for Respondent.

HART, J.—Plaintiff brought the action to recover damages for the death of her husband, alleged to have been negligently caused by the defendants. The jury returned a verdict in favor of defendant, McKnight, and in favor of plaintiff against the defendant, Southern Pacific Company, in the sum of twenty thousand dollars. Judgment was entered accordingly and defendant, Southern Pacific Company, appeals from that portion thereof awarding damages against it.

Thomas V. Fimple met his death on the fourteenth day of July, 1914, being struck by a "light" engine then in charge of the defendant McKnight, while driving an automobile across the railroad tracks of the corporation, near the town of Durham, in Butte County. With Fimple in the automobile was a young man named William Drouillard, who was also killed. His father, Edward Drouillard, brought an action for damages against the same defendants, in which judgment was entered in favor of plaintiff. That action was before us on appeal (Civ. No. 1778) and a decision affirming the judgment was filed in this court on March 4, 1918. (*Drouillard* v. *Southern Pac. Co.*, 36 Cal. App. 447, [172 Pac. 405].) A very full statement of the circumstances under which the accident occurred may be found therein, to which we refer.

Appellant urges a reversal of the judgment on two grounds: 1. That the verdict of the jury exonerating defendant McKnight operated also to exonerate the defendant Southern Pacific Company; and, 2. Contributory negligence of the deceased.

It cannot be doubted that it is the law that, unless the appellant participated in the negligence which it is charged produced the injuries and consequent death of the deceased, or that it committed some different and distinct act of negligence, separate from and independent of that of its engineer and codefendant, McKnight, which, concurring with that of McKnight, proximately produced the injuries whereby the deceased lost his life, the appellant cannot be held liable for the death of Fimple, since its codefendant and agent was ac-

quitted by the jury of all blame or culpability for said injuries and death. In other words, if the damage was negligently produced by the defendant, McKnight, the locomotive engineer, while he was engaged in discharging his duties as a servant or agent of the appellant, and the negligence of said defendant so producing the damage was not personally participated in or aided by some negligent act of the appellant wholly independent of and dissociated from the act of the engineer, then a verdict acquitting the latter of culpable negligence is necessarily a verdict likewise acquitting the appellant, for the very obvious reason that where injury is solely the result of the negligence of the servant while performing his duties as such, the principal's liability for such injury can follow only from the relationship existing between the master and servant as such. They are not joint tort-feasors, so that either or both may be sued for the tort committed.

The doctrine above stated has been explained and applied in many cases. Thus, in *Lake Shore etc. R. Co.* v. *Goldberg,* 2 Ill. App. 228, one of a number of defendants jointly sued in trespass was acquitted. The appellant had committed the trespass, if any was committed, only through its agent. At the trial the appellant introduced as a defense the judgment exonerating the defendant first above referred to. The reviewing court, holding that the defense should be sustained, said: "But where the real actor, none the less liable personally because acting for another, is not guilty, it necessarily follows that the party for whom he acted cannot be. The principal can be no more guilty by reason of the act of his agent than if he had committed the act in person and the party who was alone charged to have committed the act in person was conclusively adjudged not guilty. We see no escape from our conclusion, and for authority refer to *Thomas* v. *Rumsey* 6 Johns. (N. Y.) 26, and *Henry* v. *Fowler,* 39 Me. 326 (63 Am. Dec. 627)."

In *Doremus* v. *Root,* 23 Wash. 710, [54 L. R. A. 649, 63 Pac. 572], the plaintiff brought the action against Root and the Oregon Railroad & Navigation Company for damages for injuries sustained by the plaintiff in a collision between two freight trains of the railroad company. Root was the conductor of one of the trains and the plaintiff a fireman on the other. The collision was due, so it was alleged, to the failure of Root, who had been duly apprised of an approaching train

from the opposite direction, to obey instructions given him to stop and sidetrack his train at a certain named station and there wait until the other train passed. The verdict rendered was in favor of the plaintiff as against the railroad company, but was silent as to Root, and the Washington court held such silence to be tantamount to an acquittal of Root of culpability. Judgment was rendered upon the verdict in favor of the plaintiff against the railroad company and in favor of Root, and the supreme court reversed the judgment and remanded the case, with instructions to the court below to enter judgment for the railroad company. The principle above referred to was elaborately considered in that case, the court holding that the exoneration of Root from legal responsibility for the injuries received by the plaintiff necessarily operated to acquit the railroad company of blame. The court, among other things, said: "It must be borne in mind, however, that there are wide distinctions between the ordinary action for injuries, where all of the defendants participated in the wrongful act which caused the injury, and actions like the one before us, where one is liable because he committed the act and the other by operation of law, both with respect to the relations of the defendants to each other and to the injured person. Joint tort-feasors are liable to the injured person (other than that he may have but one satisfaction) as if the act causing the injury was the separate act of each of them, and they have, except in certain special cases, no right of contribution among themselves. But the defendants in this character of action are in no sense joint tort-feasors, nor does their liability to the plaintiff rest on the same or like grounds. The act of an employee, even in legal intendment, is not the act of his employer, unless the employer either previously directs the act to be done or subsequently ratifies it. For injuries done by the negligent act of an employee not directed or ratified by the employer the employee is liable because he committed the act which caused the injury, while the employer is liable, not as if the act was done by himself, but because of the doctrine of *respondeat superior*—the rule of law which holds the master responsible for the negligent act of his servant committed while the servant is acting within the general scope of his employment, and engaged in his master's business. The primary liability to answer for such an act therefore rests upon the employee, and when the em-

ployer is compelled to answer in damages therefor he can recover over against the employee. (*Oceanic Steam Nav. Co., Ltd.,* v. *Compania Trans. Espanola,* 134 N. Y. 461, [30 Am. St. Rep. 685, 31 N. E. 987]; note to *Village of Cartville* v. *Cook* (Ill.), 16 Am. St. Rep. 248; Shearman & Redfield on Negligence, 5th ed., sec. 242; 2 Van Fleet on Former Adjudication p. 1162.) . . . In such an action, whether brought against the employer severally or jointly with the employee, the gravamen of the charge is, and must be, negligence of the employee; and no recovery can be had unless it be proven and found by the jury, that the employee was negligent. Stated in another way: if the employee who causes the injury is free from liability therefor, the employer must also be free from liability." (See, also, *New Orleans etc. R. R. Co.* v. *Jopes,* 142 U. S. 18, [35 L. Ed. 919, 12 Sup. Ct. Rep. 109].)

In *Bradley* v. *Rosenthal,* 154 Cal. 420, [129 Am. St. Rep. 171, 97 Pac. 875], the plaintiff sued for the recovery of damages for injuries sustained while engaged in working for the defendant corporation, the complaint alleging that the plaintiff was employed by the company through Rosenthal, its agent, to assist in constructing telephone lines for the company, that the defendants carelessly, etc., furnished certain poles from which the wires were to be strung which were very brittle and unfit for said purpose, and that while he was in the act of ascending one of said poles, in a careful and workmanlike manner, for the purpose of adjusting the wires thereto, said pole, "by reason of its brittleness and unfitness for said purpose broke," the result of which was that he was thrown violently to the ground, receiving the injuries for which he sought damages. The defendants interposed separate answers, Rosenthal admitting his employment by the company as a lineman and that he employed the plaintiff, but averred that in the employment of plaintiff he did so solely as the agent of the company. He denied the furnishing of unfit and unsuitable poles. The cause was tried by a jury, and to them the trial court gave an instruction that if Rosenthal was the agent of the company, and in his capacity as such agent employed the plaintiff, "you cannot find or assess damages against him." The jury found for Rosenthal, exonerating him from liability for the injuries received by the plaintiff and in favor of the latter as against the telephone company, and judgment was entered accordingly. Reversing,

the judgment, the supreme court said: "Not one word of evidence tends to establish any direct personal participation, personal knowledge or personal culpability upon its [the company's] part, or that its employee, Rosenthal, was in any way carrying out its express instructions in the particular matter for the doing of which negligence is charged. Under such circumstances the employer is liable only because of the rule of law which holds him responsible, as well for the undirected as for the directed act of the agent within the scope of his employment. In such kind of cases where there have been no express instructions for the doing of the act complained of in the particular way, the principal and agent, master and servant, are not joint tort-feasors. The employee's responsibility is primary. He is responsible because he committed the wrongful or negligent act. The employer's responsibility is secondary, in the sense that he has committed no moral wrong, but under the law is held accountable for his agent's conduct. While both may be sued in a single action, a verdict exonerating the agent must necessarily exonerate the principal, since the verdict exonerating the agent is a declaration that he has done no wrong, and the principal cannot be responsible if the agent has committed no tort. While no right of contribution exists between joint tort-feasors, whether sued separately or collectively, there exists in the kind of case here presented much more than the mere right of contribution. The principal who has been obliged thus to pay for the unauthorized negligent act of his agent resulting in injury may indemnify himself to the full amount against his agent." (See, also, *Thompson* v. *Southern Pacific Co.*, 31 Cal. App. 567, 575, [161 Pac. 21]; 1 Cooley on Torts, 3d ed., 255, and the cases cited in *Bradley* v. *Rosenthal*, on pages 424, 425 of 154 Cal., [129 Am. St. Rep. 171, 97 Pac. 875].)

The record in this case does not disclose a particle of evidence showing or even tending to establish any "direct personal participation, personal knowledge or personal culpability" upon the part of the appellant, "or that its employee, McKnight, was in any way carrying out its express instructions in the particular matter for the doing of which negligence is here charged." Therefore, as stated in the outset of this opinion, unless it is appropriately claimed by the complaint and shown by the evidence that the appellant personally participated in the negligence of which McKnight is

alleged to have been guilty, or itself committed some act or acts of negligence, either of omission or commission, other than and separate from the act of negligence charged against McKnight, which contributed to the damage complained of, or, concurring with the negligence charged against McKnight, produced said damage, the judgment against the appellant cannot, upon the doctrine asserted in the cases above referred to and quoted from, be upheld. And that appellant was guilty of an act of negligence, separate and distinct from that charged against its employee, McKnight, which, in conjunction with that of McKnight, proximately caused the death of the deceased, is precisely what the respondent here claims as an offset to the ineluctable effect of the above considered decisions in cases of this kind.

It is contended that the plaintiff, in her complaint, not only pleads acts of negligence on the part of the engineer which bring home to the appellant liability for its servant's said acts under the rule of *respondeat superior,* but further pleads that the appellant itself was negligent in that, at and in close proximity to the crossing where the unfortunate accident occurred, it maintained permanent buildings and, at the time of the accident, had sidetracked and maintained boxcars near said crossing, which buildings and boxcars so obstructed the view of the crossing by those in charge of a locomotive traveling in a southerly direction as to prevent them from seeing the crossing.

Thus an examination herein of plaintiff's pleading becomes necessary. First, it is well to state the well-understood rule of pleading in negligence cases that, while general negligence may thus be relied upon without pleading specific acts of negligence, yet, where specific acts of negligence are relied upon for a recovery, they must be specially pleaded. The charging part of the complaint is as follows: "That while said Thomas V. Fimple was operating and driving said automobile along said public highway and county road as aforesaid, and as said automobile reached said public crossing at the point hereinabove alleged, at about the hour of 12:57 P. M. on said fourteenth day of July, 1914, and was crossing over and across said tracks of said defendant Southern Pacific Company, said defendant Southern Pacific Company, through and by its agent, servant, and employee, defendant William J. McKnight, who was then and there the locomotive engineer and

engine foreman in charge of said locomotive, *negligently and carelessly, without whistle being blown or bell rung or any warning or signal of any kind or character being given before reaching said public highway and county road* [italics ours], ran one of its locomotives, operated by steam, in a southerly direction along said tracks, across said highway and county road at said crossing, at a great and negligent rate of speed; that the defendants negligently and carelessly operated said locomotive at a high and careless rate of speed at said place, notwithstanding the fact that said public crossing was concealed from view by buildings and boxcars along the side of said crossing, which said buildings and boxcars obstructed the view thereof by the persons in charge of said locomotive, which fact was well known to said defendants at and prior to said fourteenth day of July, 1914; *that, by reason of said negligent and careless rate of speed, and by reason of said careless and negligent operation of said locomotive, and by reason of the careless and negligent omission and failure to blow a whistle, or ring a bell, or to give any warning or signal of any kind or character before reaching said public highway and county road as aforesaid, the said locomotive struck said automobile* [italics ours], which said Thomas V. Fimple was operating and driving, as aforesaid, throwing said Thomas V. Fimple out of said automobile a distance of twenty or thirty feet, thereby killing said Thomas V. Fimple; that said defendant William J. McKnight was at all of the times mentioned herein, the locomotive engineer in charge of said locomotive, and was acting jointly in conjunction with said defendant corporation, in the care, management, direction and control thereof at said time.''

It will not be denied that, if the plaintiff intended to rely upon the maintenance of the alleged obstruction referred to as a ground for recovery against the appellant, it was requisite that the alleged negligence therein involved should have been specially pleaded and in such manner as clearly to show that, by reason of such negligence, the appellant itself contributed to the damage complained of.

It is not necessary to take apart or analyze herein the averments of the complaint and thus consider them to show that nowhere does that pleading disclose any act or acts of negligence except those involved in the allegations italicized above, which are confined to the alleged acts of negligence of the

engineer in running the train at a great and an unauthorized rate of speed, and the failure of the engineer to sound a whistle or ring a bell or give any other of the usual warnings of the approach of trains to a station or a crossing. While the complaint plainly says that, ''by reason of said negligent and careless rate of speed, and by reason of said careless and negligent operation of said locomotive, and by reason of the careless and negligent omission and failure to blow a whistle, or ring a bell, or to give any warning or signal of any kind or character before reaching said public highway,'' etc., there is no averment that the deceased lost his life by reason of the obstruction of the view of the crossing because of the buildings and boxcars referred to so that said crossing could not be seen by those having charge of the locomotive at the time of the accident.

In *Thompson* v. *Southern Pacific Co.*, 31 Cal. App. 567, [161 Pac. 21], the complaint alleged that, for a long time prior to the time of the accident therein complained of, the railroad company negligently and carelessly permitted to grow up and mature on the right of way of its track where the same crossed the public highway at which the company's train collided with the plaintiff's automobile, resulting in the injuries complained of, a dense growth of sunflowers and weeds to such a height that thus the view was so obstructed that a person traveling on said highway in an easterly direction across the company's track could not see the railroad track or a locomotive engine or a train of cars thereon for any distance looking in the southeasterly direction of said railroad track, ''except at a point near and almost immediately upon said railroad track.''

The gravamen of the plaintiff's cause of action, as it was set forth in the complaint in that case, was that the engineer and fireman in charge of the locomotive failed, upon approaching the crossing where the alleged injuries were received, to give warning in due time of the approach of the train by blowing a whistle or ringing a bell or otherwise signaling its approach to the crossing.

It is plainly manifest that the allegations in that case, as to the weeds and sunflowers growing near the track of the company, thereby obstructing the view of approaching trains, come much nearer to charging that the railroad company actually participated in the accident than do the allegations as

to the alleged obstruction caused by the buildings and boxcars in this case; yet this court, in the Thompson case, referring to the contention that "appellant did actually participate in the accident by reason of permitting the growth of weeds and trees so as to obstruct the view of the track," said: "But from respondent's standpoint upon the assumption that he was exercising ordinary care, it is quite clear from the record that he would have been apprised of the danger if the bell had been properly rung and the whistle sounded. He can justify his cause of action only upon the theory that these precautions were omitted. If he had conceded that these usual warnings were sounded, he would have had no cause with which to go to the jury, as he showed no reason why he would or could not have heard them in time to avoid the collision. Indeed, he alleges in his complaint that he would have heard the warning if it had been given. The presence of the weeds simply emphasized the importance and duty of great care on the part of those in charge of the train, and we repeat that since they were acquitted of negligence, the jury, to be consistent, should have gone a step further and exonerated the appellant."

As before stated, the negligence pleaded and so relied upon by the plaintiff in this case is in the omission of the engineer to sound the whistle and ring the locomotive bell, and, as in the Thompson case, the maintenance of the obstruction referred to only made it the more imperative that that duty should have been performed by the engineer as his train approached the crossing. But, after all, we are not prepared to say that the mere maintenance of the buildings and the sidetracking of the cars as indicated would constitute negligence in the appellant, unless it were additionally shown that the company had also negligently failed to employ the necessary means for protecting the traveling public against the added danger, if any, which had been created in and about the crossing by reason of the presence of the said buildings and boxcars. Weeds and sunflowers have absolutely no value, so far as a railroad is concerned, but, indeed, are a nuisance where they are permitted to grow along the roadway of a railroad to a height to interfere with the proper and safe operation of railroad trains. Buildings erected near railroad tracks are generally put there for some purpose in connection with the business of the railroad, and the sidetracking of boxcars on

sidings may always be assumed to be necessary for the purposes of the company's traffic.   Neither is a nuisance of itself, and can only become so when it is shown either that they are unnecessarily maintained, or are put in a place where the exigencies of the company's business and traffic do not require them to be maintained, or where their maintenance, though necessary for the business of the company, has had the effect of making a crossing near which they are maintained more dangerous or perilous for use by the traveling public, and the company has not employed added precautions for the safety of the public commensurate with the perils of the crossing thus added thereto.

Thus we are constrained to reverse the judgment.   It is not necessary, in view of the law applicable to this case, for us to decide whether there is evidence sufficient in probative force to support the finding of the jury that the death of Fimple was due to the negligence of the engineer by failure to give due and proper and the usual warning of the approach of the train toward the crossing, yet it is not at all improper to say that, if the negligence of the engineer, as claimed, was at the bottom of the unfortunate and fatal accident which is responsible for this action, it is greatly to be deprecated that the law—the law as we have presented it herein, and which has been plainly laid down and explained by the higher courts—is such that the guilty cannot be made to suffer for the consequences of their culpability, and, at the same time, those who have therefrom suffered so grievous a wrong given some reparation for the great loss sustained.   But a fundamental mistake in this case, in view of the law as it has been expounded and is now applied by the courts in this kind of a case, was in joining the engineer with the appellant as a defendant, even though it may be true, as has been expressly held to be so in some other jurisdictions, that a railroad company or other defendant in a case for the recovery of damages for a tort, may compel his servant, who has negligently committed an injury to person or property while engaged in performing his duties as such servant, to come in and defend the action, if such servant has not already been joined as a defendant by the plaintiff.   A verdict against the principal, if there was evidence to support it, would be upheld, and if it transpired that the delict complained of was the result solely of the negligence of the servant, or that the principal

did not personally participate in such negligence, the matter of reimbursement of the principal for the loss so sustained by reason of the negligence of his servant would be a matter to be fought out between the principal and his culpable employee.

But, as declared, we are required to apply the law as we find it laid down to the facts as they have been made to appear in the record, and thus guided, there is no other alternative open to us in this case but to reverse the judgment, and such is the order.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 23, 1918, and the following opinion then rendered thereon:

THE COURT.—In an application for a rehearing of this case, it is intimated that it was the duty of the fireman on the locomotive to ring the bell and sound the whistle as the train approached crossings, and that in this case, therefore, the negligence of the Southern Pacific Company results from the failure of the fireman, who was not made a party to this action, to give those warnings as the train was approaching the crossing where the automobile was struck by the locomotive.

There are, we think, two answers to the proposition so made, viz.: 1. That the undisputed testimony of the engineer is that he, as such engineer, was in charge of the locomotive on the occasion of the accident, and from this testimony it is to be assumed, if not presumed, that the fireman, in the discharge of his duties as such, was entirely subject to the control and orders of the engineer, and whether in such case the fireman's duty was to sound the whistle or ring the bell, or to perform both such acts, when ordered by the engineer to do so, is not material; 2. That the complaint contains no charge of negligence against the fireman and nowhere attempts to impute to the Southern Pacific Company any negligence of which the fireman might have been guilty. To the contrary, the complaint alleges that the engineer, McKnight, was "the locomotive engineer and engine foreman in charge of said locomotive," and that the "said defendant, Southern Pacific Company, through and by its agent, servant, and employee, defendant William J. McKnight, negligently and carelessly"

did the damage complained of. Thus it is very clear that the plaintiff did not rely upon the negligence of the fireman, if any he was guilty of, but that the whole theory of her case, as made by her complaint, was that, if the Southern Pacific Company was at all culpable in the matter, it was wholly through the alleged negligence of McKnight, the engineer then in charge of the locomotive. We think that if the plaintiff intended to rely upon any negligence of the fireman, and so connect the Southern Pacific Company with such negligence upon the doctrine of *respondeat superior,* it was incumbent upon her to plead such negligence, just as it would have been her duty to do if she had relied on negligence of the company's station agent or any other servant of the defendant company.

As gratifying as it would certainly be to this court to see the plaintiff receive adequate compensation for the great loss she has sustained, assuming that the damage was the direct result of the negligence of the company's locomotive engineer and servant, we cannot see our way clear to recede from the conclusion at which we originally arrived herein.

The petition must be denied, and it is so ordered.