[L. A. No. 19233.   In Bank.   June 29, 1945.]

CHARLES S. PELLETT, Appellant, v. SONOTONE COR-
PORATION (a Corporation) et al., Respondents.

Joseph D. Taylor and Russell G. Hager for Appellant.

Leonard Wilson for Respondents.

GIBSON, C. J.—This is a second appeal by plaintiff in an action for damages for personal injuries. On the prior appeal (*Pellett* v. *Sonotone Corp.*, 55 Cal.App.2d 158 [130 P.2d 181]) a judgment of nonsuit was reversed. On the second trial the court directed a verdict in favor of defendants, and plaintiff has appealed from the ensuing judgment.

Plaintiff purchased a hearing device from defendant Sonotone Corporation. Part of the device consisted of an individually moulded ear tip which required the making of a plaster cast or impression of plaintiff's ear. Defendant Brown, a salesman and "consultant" for defendant Sonotone, requested defendant Compton, a dentist, to make the cast, and plaintiff and Brown went to Compton's office for that purpose. Comp-

ton, assisted by Brown, made the cast. Subsequently plaintiff felt a pain in his ear. He consulted an ear specialist and learned that a foreign substance was present. Some plaster of paris, wax, and cotton were removed, and the pain diminished and then disappeared.

▐ Aside from the agreement hereafter referred to, it appears that the evidence was substantially the same as that introduced at the first trial which resulted in a nonsuit. On appeal that judgment was reversed by the District Court of Appeal which held (55 Cal.App.2d 158, 161 [130 P.2d 181]) that "Assuming for the purpose of this appeal only that the above statement of facts is true, we are of the opinion that the trial jury might reasonably have believed that defendant Compton and defendant Brown were agents of defendant Sonotone Corporation and that defendant Compton and defendant Brown were negligent in not having used an appropriate instrument to examine plaintiff's ear after the plaster cast was made to be certain that none of the plaster or cotton used remained in his ear, and likewise that plaintiff was not dilatory in discovering that some of the plaster and cotton had been negligently left in his ear." No attempt has been made to show that there was any substantial difference in the evidence at the second trial, but even if additional evidence was introduced, any conflict thereby created would be immaterial in determining the sufficiency of the evidence to support a judgment for plaintiff. Unless it is shown that some essential fact or facts which were proved at the first trial were not proved on the second trial, or were *conclusively* disproved, the law of the case applies in determining the sufficiency of the evidence. (*Berry* v. *Maywood Mut. W. Co. No. One,* 13 Cal.2d 185, 186 [88 P.2d 705] ; *Wells* v. *Lloyd,* 21 Cal.2d 452, 454, 455 [132 P.2d 471].) ▐ The power of the trial court to direct a verdict is subject to the same limitations as its power to grant a nonsuit (*Gindraux* v. *Maurice Mercantile Co.,* 4 Cal.2d 206, 208 [47 P.2d 708] ; *Gish* v. *Los Angeles Ry. Corp.,* 13 Cal.2d 570, 572, 573 [90 P.2d 792]), and hence, under the law of the case, it must be held that plaintiff had made a sufficient showing and was entitled to have the issues submitted to the jury unless he had released the defendants from liability.

Defendants claim that the directed verdict was justified because they were released by reason of plaintiff's execution of a document reading as follows:

"WHEREAS, Charles S. Pellett, through his attorney, has become satisfied that the defendant, G. L. Compton, in the performance of any acts or of his negligent failure to do anything which should have been done, was subject to the direction and control and supervision of John E. Brown and the Sonotone Corporation, and that any negligence on the part of said Dr. G. L. Compton, was not due to any culpability of the said G. L. Compton, and,

"WHEREAS, Charles S. Pellett is also satisfied that a great portion of the property of G. L. Compton is exempt from execution and that the levy of an execution upon any property of G. L. Compton will work a hardship upon him, and

"WHEREAS, in any event, Charles S. Pellett has been advised by his counsel that the covenant hereinafter made will in no wise prejudice his case or prevent recovery and collection from the defendant Sonotone Corporation, and the defendant, John E. Brown;

"Now, THEREFORE, Charles S. Pellett hereby agrees and covenants with G. L. Compton as follows:

"Said G. L. Compton, as a consideration for the covenant hereby made by Charles S. Pellett, does hereby agree to pay to the said Charles S. Pellett the sum of $10.00 in the event a judgment is entered in favor of Charles S. Pellett and defendant in said action, and said G. L. Compton agrees to pay to said Charles S. Pellett the sum of $5.00 on or before 60 days from date hereof in any event and regardless of what judgment may be entered in the above entitled action.

"In consideration of the promises herein contained on the part of G. L. Compton, Charles S. Pellett covenants and agrees with said G. L. Compton that in the event a judgment is entered against said G. L. Compton, in the above entitled action, that he will not levy execution issued upon said judgment against any property of said G. L. Compton and that he will make no demand upon G. L. Compton to pay said judgment or any portion thereof.

"Said G. L. Compton, as further consideration for the covenant herein contained agrees not to file this covenant and agreement in the above entitled action, except in the event any proceedings are commenced by Charles A. Pellett contrary to and in violation of this covenant.

"Said G. L. Compton further agrees that he will defend said action by his attorney in the interests of justice and will not withdraw his attorney from said action until a verdict of

the jury has been rendered or until the court has by directed verdict or non-suit terminated the trial of said action.

"IN WITNESS WHEREOF the parties hereto have signed this covenant this      day of June, 1941.

Charles S. Pellett<br>
Plaintiff<br>
G. L. Compton,<br>
Said Defendant."

Defendants contend that this document constituted a release of defendant Compton and consequently a discharge of the others. Plaintiff contends that the document was not intended to be and is not a release, or even a covenant not to sue, but merely an agreement not to levy execution on defendant Compton's property and not to make demand on him for payment of any judgment rendered.

It appears that this document was executed while the first trial was in progress, and plaintiff's explanation is that "Under ordinary circumstances a dismissal of the case against G. L. Compton would have been filed, but because of the doctor's better knowledge of what had happened in connection with the making of the plaster impression and the adverse interest which, under plaintiff's theory of the case, he had in clearing himself of responsibility by showing that he acted as directed by Sonotone Corporation, it was considered necessary to have his counsel continue throughout the trial, and for that reason the document in question was prepared and executed." The existence of this document was not disclosed until the case was called for the second trial when defendant Compton sought a continuance because his former attorney was in military service. Plaintiff's counsel opposed a continuance stating that the matter had been settled as to him, but refused to give a copy of the agreement to counsel for defendant Sonotone until directed to do so by the trial court. Defendant Sonotone then pleaded the agreement in a supplemental answer.

The rule in this state, applied in many cases, is that a release of one joint tort feasor is a release of all (*Bee* v. *Cooper*, 217 Cal. 96 [17 P.2d 740]; *Bogardus* v. *O'Dea*, 105 Cal.App. 189 [287 P. 149]; see, also, cases cited in 20 McK. Dig., p. 615), but that a mere covenant not to sue one joint tort feasor does not release the others. (*Lewis* v. *Johnson*, 12 Cal.2d 558, 562 [86 P.2d 99]; *Kincheloe* v. *Retail Credit Co., Inc.*, 4 Cal.2d 21 [46 P.2d 971].) There is authority in other

jurisdictions for a contrary holding, where the one making the release reserves his rights against the others, if he has not received full satisfaction. (See, Rest., Torts § 885.) This view is illustrated by *McKenna* v. *Austin*, 134 F.2d 659, which proceeds on the theory that it is a question of fact and intent whether a settlement is made in full satisfaction or merely as the best obtainable compromise; and that a partial satisfaction taken in compromise does not discharge the other wrongdoers. It should be noted, however, that the McKenna case also recognizes the right to contribution among joint tort feasors, which is not permitted in this state.

As pointed out in the McKenna case, the distinction between a release and a covenant not to sue is entirely artificial. As between the parties to the agreement, the final result is the same in both cases, namely, that there is no further recovery from the defendant who makes the settlement, and the difference in the effect as to third parties is based mainly, if not entirely, on the fact that in one case there is an immediate release, whereas in the other there is merely an agreement not to prosecute a suit. The rule regarding a covenant not to sue was apparently adopted as an exception to the strict release rule because the courts desired to modify the latter rule by indirection.

There does not seem to be any prior decision involving an agreement exactly like that made by the plaintiff herein. (*Cf. Schramm* v. *Brooklyn Heights R. Co.*, 35 App.Div. 334 [54 N.Y.S. 945].) On its face, the agreement is not strictly a release or a covenant not to sue, although it partakes somewhat of the nature of both.

A release has been defined as the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced (Black's Law Dict., Ballentine's Law Dict.) and its effect is to extinguish the cause of action; hence it may be pleaded as a defense to the action. A covenant not to sue, on the other hand, is not a present abandonment or relinquishment of the right or claim, but merely an agreement not to enforce an existing cause of action. It does not have the effect of extinguishing the cause of action; and while, in the case of a sole tort feasor, the covenant may be pleaded as a bar to the action in order to avoid circuity of action, a covenant not to sue one of several joint tort feasors may not be so pleaded by the covenantee, who must seek his remedy in an action for

breach of the covenant. (*Sunset Scavenger Corp.* v. *Oddou*, 11 Cal.App.2d 92, 96 [53 P.2d 188] ; *Hawber* v. *Raley*, 92 Cal. App. 701, 704 [268 P. 943] ; *Matthey* v. *Gally*, 4 Cal. 62, 64 [60 Am.Dec. 595].) ▇ In the present case, plaintiff covenanted that, if judgment was entered against defendant Compton, he would not levy execution against Compton's property or make any demand upon him to pay the judgment or any portion thereof. Defendant Compton, on the other hand, covenanted that he would defend the action and would not file the agreement "except in the event any proceedings are commenced by Charles A. Pellett contrary to and in violation of this covenant." Since no execution could issue or demand for payment of the judgment be made until after entry of the judgment, the agreement, according to its terms, could not be pleaded as a defense to the action, and hence it lacks one of the essential elements of a release.

The theory on which a release is held to bar a recovery is that the plaintiff has accepted payment in satisfaction or in compromise of his right of action, and has released and abandoned his right of action in consideration of the payment received. In the present case there is nothing in the agreement, or in the record, to indicate that the payments of $5 within 60 days and $10 in the event judgment was entered in favor of plaintiff were ever made or that they were intended to or did constitute any payment in satisfaction, in whole or in part, or in compromise, of the right of action. There is no provision of the agreement indicating any release or relinquishment of the right of action, and the agreement cannot be construed as a release.

▇ In the case of covenants not to sue, while it is customary for the covenantor to make an express agreement to indemnify the covenantee and hold him harmless in case of any violation of the covenants, it is not essential that there be an express agreement to that effect, and the covenantee may waive the express undertaking to indemnify and rely solely upon his remedy of damages for breach of the covenant. Hence, in the present case, the absence of any provision for indemnification does not compel a holding that the document is a release.

▇ On the other hand, the agreement does not purport to be, nor can it be construed strictly to be, a covenant not to sue, since it does not contemplate a cessation of the existing litigation, but on the contrary provides for continuation of

the trial and places on defendant Compton the burden of defending the action until the rendition of a verdict or a nonsuit. However, since the plaintiff did not expressly or by necessary implication abandon or relinquish his claim or right of action, or agree to accept the payments in satisfaction of his claims, and since the agreement according to its terms could not be pleaded by the covenantee as a defense to the action, and since the only agreement by plaintiff was that he would not levy execution on any property of the covenantee or make demand upon him for payment of the judgment or any portion thereof, we are of the opinion that it is closely akin to a covenant not to sue, that its legal effect should be held to be similar, and that it is not such an instrument as will operate to release other joint tort feasors.

We do not, however, approve the provisions of the agreement which required Compton to defend the suit and bound him "not to file this covenant and agreement in the above entitled action, except in the event any proceedings are commenced by Charles A. Pellett contrary to and in violation of this covenant." While the trial court did not find, and we cannot hold as a matter of law, that there was any fraud or collusion in this case, such an agreement might lead to a fraud upon the court by concealing the position of a party who is an important witness in the action. In the present case, however, the court and the other parties were fully informed of the nature and contents of the agreement prior to the second trial, and the court or jury could weigh the testimony of defendant Compton in the light of the knowledge that, since the agreement provided that a judgment could not be enforced against him, he was not a witness who was adverse to the plaintiff. Moreover, the validity of the agreement, as between the parties thereto, is not at issue herein.

The judgment is reversed.

Shenk, J., Carter, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent. This proceeding involves separate causes of action against several defendants. (Code Civ. Proc., §§ 379 a-c; see *Kraft* v. *Smith*, 24 Cal.2d 124, 128 [148 P.2d 23]; *Peters* v. *Bigelow*, 137 Cal.App. 135, 141 [30 P.2d 450]; Prosser, Torts, p. 1101.) Plaintiff contends that Compton caused the injury by negligently failing to remove plaster and cotton from plaintiff's ear, and that since he acted as

Sonotone's agent, Sonotone, as well as Compton, is liable for Compton's negligence. Plaintiff also contends that Brown and Sonotone are independently liable for his injury, even if Compton is not, on the grounds that Brown failed to supervise Compton properly and advised plaintiff that the pain in his ear was to be expected and was of no consequence, and that Sonotone gave improper instructions to its agents.

In my opinion, plaintiff's agreement with Compton covered only the cause of action based on Compton's own negligence and did not relate to plaintiff's causes of action based on the independent acts of negligence of the other defendants. (See *Ash* v. *Mortensen,* 24 Cal.2d 654, 658-659 [150 P.2d 876]; Prosser, *Joint Torts and Several Liability,* 25 Cal.L.Rev. 413, 423-425, 442-443; Prosser, Torts, p. 1107-1111.) Plaintiff may therefore pursue any cause of action involved in this action consistent with lack of negligence on the part of Compton. As to the cause of action based on Sonotone's liability for Compton's negligent conduct as Sonotone's agent, I believe that plaintiff is bound by his agreement with Compton that the latter was not at fault. He cannot claim that the agreement is fictitious in order to pursue a cause of action against Sonotone based on Compton's culpable conduct as Sonotone's agent.

It is not necessary to determine in this case whether a principal who is secondarily liable for negligent conduct of his agent is released from liability if the plaintiff makes a compromise with the agent wherein the plaintiff for partial satisfaction of his claim for damages releases the agent. When the secondarily liable defendant is a surety, a release of the principal debtor ordinarily discharges the debt for which the surety is secondarily liable and releases the surety. (*Lamb* v. *Wahlenmaier,* 144 Cal. 91, 95 [77 P. 765, 103 Am.St.Rep. 66]; see *Holden* v. *Mensinger,* 175 Cal. 300, 304 [165 P. 950]; 4 Williston, Contracts (rev. ed.) § 1220.) It is also settled that a verdict in favor of an agent in a tort action terminates the liability of the principal, since that liability is based on the agent's alleged fault and is incompatible with a verdict denying blameworthy conduct on the part of the agent. (*Bradley* v. *Rosenthal,* 154 Cal. 420, 423 [97 P. 875, 129 Am.St.Rep. 171]; *Fimple* v. *Southern Pacific Co.,* 38 Cal.App. 727, 731 [177 P. 871]; see 78 A.L.R. 365; 1 Cal.Jur. 845.) The agreement in the present case was not a compromise and did not give plaintiff partial or full satisfaction for his damages. In

my opinion the five dollars to be paid by Compton upon the execution of the agreement was only a nominal consideration for plaintiff's promise "that in the event a judgment is entered against said G. L. Compton . . . he will not levy execution upon said judgment against any property of said G. L. Compton and . . . will make no demand upon G. L. Compton to pay said judgment or any part thereof."

The real significance of the agreement, which was to be concealed from Sonotone and the court, appears from the circumstances under which it was made. Those circumstances speak for themselves. Any person who introduces foreign substances into the body of another must exercise care in removing them (see *Ales* v. *Ryan,* 8 Cal.2d 82, 106 [64 P.2d 409]; *Engelking* v. *Carlson,* 13 Cal.2d 216, 221 [88 P.2d 695]; *Armstrong* v. *Wallace,* 8 Cal.App.2d 429, 439 [47 P.2d 740].) Plaintiff could therefore assume that he had a promising case with respect to the cause of action based on Compton's negligence and could expect to recover from Sonotone the damages caused by the negligence of its agent Compton. It is apparent that plaintiff was interested in maintaining the outward appearance of a lawsuit against Compton in order to get Compton's testimony as a presumably hostile witness to prove Compton's negligence and to make Sonotone responsible for that negligence. Hence the agreement that in substance provided that Compton's testimony would not make him responsible to plaintiff. This scheme made the action against Compton a collusive proceeding. It is clear that plaintiff expected by this agreement to secure favorable testimony from Compton in his action against Sonotone, and that Compton's true performance was to be the giving of favorable testimony. Since the contract could not set forth such an immoral consideration it was predicated on the agreement that Compton was not guilty of culpable conduct. It provided: "WHEREAS, Charles S. Pellett, through his attorney, has become satisfied that the defendant, G. L. Compton, in the performance of any acts or his negligent failure to do anything which should have been done, was subject to the direction and control and supervision of John E. Brown and the Sonotone Corporation, and that any negligence on the part of said Dr. G. L. Compton, *was not due to any culpability of said G. L. Compton.*" (Italics added.)

Plaintiff should be bound by his agreement that there was

no culpability on Compton's part. He should not be allowed to maintain that this agreement was fictitious after contriving to obtain Compton's favorable testimony by promising him immunity from liability. (See Civ. Code, § 3517.) He cannot agree that Compton is blameless and at the same time make Compton's principal liable on the basis of culpable conduct of Compton. Fraud would be encouraged if it were held that such an agreement has no effect on the principal's liability, which depends solely on the fault of the agent. The public policy underlying the liability of the principal for the agent's torts (*Otis Elevator Co.* v. *First National Bank,* 163 Cal. 31, 39 [124 P. 704, 41 L.R.A.N.S. 529]; *Bank of California* v. *Western Union Telegraph Co.,* 52 Cal. 280, 288; see Prosser, Torts, p. 472) has no effect when the plaintiff and the agent conspire to make the principal alone responsible for the agent's fault.

Edmonds, J., concurred.