[Civ. No. 16995.   First Dist., Div. Two.   Jan. 15, 1957.]

MARTINHA ENNES, Appellant, v. ALFRED J. ENNES, Respondent.

Hutchinson & Quattrin and Crabbe & Streiff for Appellant.

Thomas Pierce Rogers for Respondent.

KAUFMAN, J.—This is an appeal from a judgment entered on December 22, 1954, in an action for an accounting and for partition of real estate brought by appellant Martinha Ennes

against her husband Alfred J. Ennes, under a property settlement agreement executed by the parties. Respondent filed an answer and a cross-complaint setting forth the accounting. He asked that said accounting be approved and requested specific performance of the property settlement agreement.

The count asking partition of real estate was dismissed before trial, inasmuch as the real property involved therein had been sold.

Appellant had brought an action for separate maintenance against respondent on September 8, 1950. On September 19, 1950, on hearing of an order to show cause $250 per month for support was ordered paid to appellant by respondent, and it was ordered that the attorney of the parties select an accountant to ascertain the financial condition of respondent and the income of the parties from their properties. On October 26, 1950, the court made an order in which it recited that it had continued the matter until it received the report of a certified public accountant, and then ordered $250 per month to be paid appellant pendente lite, and further ordered that respondent is "authorized to withdraw from the income of the properties involved in this action" the sum of $250 per month for his support and maintenance. Two thousand dollars counsel fees were allowed to each party out of the properties owned by the parties. It was also ordered that if the parties agreed upon the sale of any piece of property, the restraining order which had been previously issued, preventing respondent from disposing of any of the properties is so modified as to permit such sale.

Although respondent states that the court ordered respondent to continue management of the community properties, there is no such specific order in either the order of September 19, or October 26, 1950. There is nothing in the latter order that indicates that the court was to receive any further accounting reports. Moreover, the second report of the accountant, received in evidence, is dated October 31, 1951, which is subsequent to the interlocutory decree of divorce which states that the parties have settled all their property rights in accordance with a written contract which is made a part of the decree.

On June 12, 1951, the parties executed a property settlement agreement, which was thereafter incorporated into the Interlocutory Judgment of Divorce on July 17, 1951. Final Judgment of Divorce was entered on July 22, 1952, shortly after this action had been commenced.

The property settlement agreement states that it is the purpose of the parties to "fully, completely and absolutely settle, fix and terminate any and all of their property rights." Several pieces of real property are therein allotted to one or the other of the parties free of all claims of the other. None of these parcels are involved in this case. It is provided that the real property at 7040 Geary Street, San Francisco, shall be sold and the net proceeds divided equally. Paragraph 20 of said agreement provides that real property at 746 Geary Street and 1054 Sutter Street, San Francisco, shall be sold at the best obtainable price, approved by both parties. Before division of the proceeds of these sales, expenses of the sale such as commissions are to be deducted, as well as income and capital gains taxes. Real estate taxes "now delinquent on said properties and all other properties of the parties hereto shall, upon the following conditions, be payable out of the proceeds of the sale of all of the properties in this instrument provided for to be sold, to wit:

"That first the Second Party shall show that he has well, truly and conscientiously accounted for every dollar of income and every dollar of expense derived from any and all of said properties referred to anywhere in this agreement, and that if it shall appear that he has not well and truly paid out all of the returns received from the sale of said properties, excepting only the sum of $250. drawn by him for living expenses, and a like amount paid to the First Party, then and in that case, Second Party shall bear and pay any difference which may exist as shown by said accounting between the money so received by him and the taxes not paid by him and for which he received the moneys and did not account. It is understood and agreed that all other bills of every kind, including cost of deposition, cost of title report, and cost of C. T. Plummer, Accountant, and any and all other bills of any kind in connection with the said real property, including insurance, shall be paid by the Second Party [respondent]."

Paragraph 23 provided that the parties waived all rights of inheritance against each other, "all rights to family allowance, all rights to alimony, support or maintenance or counsel fees, except as herein referred to and already allowed herein" and agreed that this was a "full, complete, absolute release and settlement of all property rights." The only reference in the agreement to support or alimony, was that referred to above in paragraph 20, allowing the husband to withdraw

$250 for his support and a like amount to appellant from the proceeds of the sales, and the final paragraph of the agreement which provided that it was understood "that the alimony payment of $250 to the First Party shall continue until the sale of the properties, and that the same amount shall also be paid to the Second Party, as heretofore ordered by the Court."

Counsel fees of $2,000 had been previously awarded for each party to be paid by respondent. The agreement provided that $250 of the first party's attorneys fees had been paid, that respondent should pay $500 additional counsel fees, making a total of $2,250.

Paragraph 27 of the agreement provides that until the properties are sold, respondent "shall incur no debts against the property for repairs or any matter or thing, without having the express written approval therefor of Joseph A. Brown, one of the attorneys for the First Party."

The complaint herein charged failure of respondent to pay $5,000 under paragraph 9 of the agreement, which provided that he was to pay that sum as consideration for receiving fee simple title to the Faxon Avenue property of the parties; that he had failed to deliver the promissory note referred to in paragraph 7 of the agreement; that he had failed to pay the mortgage on property at 109 Genessee Street in the sum of $2,431.46 as provided in the agreement. Certain other failures to perform were alleged, one being a failure to pay appellant $250 per month since August 1, 1951.

Respondent denied all these charges, alleged that he had diligently managed the property from the date of the filing of the divorce action until March 3, 1953, the date when the last of the properties was sold. He alleged that the accountant's reports which had been made from his record showed that he had obligated himself in the sum of $14,130.80 in excess of money received by him in the management of the parties' properties, that this excess accrued after August 10, 1951, following the sale of the only substantial income producing property. The answer admits that respondent promised to pay appellant under the agreement the sum of $5,000 and the balance due in the deed of trust on the Genessee property, a total of $7,006.21, but alleges that the amount which appellant owes him totals $7,886.12 or more than what he owes her. He alleges that the accounting shows that prior to August 10, 1951, appellant had received her support allow-

ance of $250 per month and respondent was credited with $2,427.35 (which he had not withdrawn as he had been authorized to do by court order of October 26, 1950.)

Appellant contends that the testimony of respondent Alfred Ennes and all evidence in support of his alleged expenditures is inaccurate and inherently improbable. But as there is nothing on its face inherently improbable in the testimony of either respondent or the accountant, there is no merit in this charge.

It is urged that the reports of the certified public accountant, Plummer, were not admissible in evidence. Appellant complains that they were not admissible because she or her representative were not present when they were made. This accountant, was however, selected by appellant's attorney, and the parties named him as their accountant in the property settlement agreement. There is no evidence that appellant ever asked to be present when these reports were made. Undoubtedly, respondent had a very informal method of keeping records, considering the substantial nature of the properties here involved, but the record shows that the accountant had access to all the records which appellant kept, check stubs, copies of rent receipts issued, bills, bank deposits records, income tax reports. ██ It is true, however, as appellant states in her reply brief, that the burden of establishing the account is upon the trustee of the property and respondent undoubtedly served in the capacity of a trustee in view of his management of the joint properties until their sale. (*McKay* v. *McKay*, 184 Cal. 742, 746 [195 P. 385].) In *Purdy* v. *Johnson*, 174 Cal. 521, 527 [163 P. 893], which appellant contends is very similar to the present case, the court reversed the judgment when the trustee presented to the court a restatement of the account by an expert accountant. The trustees did not testify on direct examination but were subjected to cross-examination by plaintiff. The court stated that the course pursued was irregular. The court there found that the charges attacked were not supported by vouchers or testimony. The expert had based such charges on memorandum checks or tags found among papers at the bank and not signed by plaintiff, and they were held not to constitute vouchers sufficient to show payment to the beneficiary. In the present case respondent Ennes testified on direct examination as to how he kept his accounts, that they were complete, and that all of them had been available to the accountant in preparing his reports. He also testified that no major repairs had been made to the properties without the consent in writing of

appellant's attorney, Mr. Brown. This case is therefore distinguishable from that cited above, in that respondent herein did testify as to the validity of the accounts on direct examination, and offered testimony which, though certainly not very detailed, if believed, would substantiate the charges made for repairs, maintenance, and operating expenses of the properties.

It is appellant's position that the charge of $2,427.35 for support allowance was improper. We agree. Prior to the property settlement, respondent had paid to appellant the $250 per month alimony pendente lite ordered by the court. He had, however, drawn but $322 from the income of the properties for his own support although he had been given authorization to draw $250 per month from said income. He testified that the income was insufficient to provide the payments to himself during this period. As this charge against the joint properties all accumulated prior to the execution of the property settlement agreement appellant maintains that the language therein declaring that "this is a full, complete, absolute release and settlement of all property rights," and that "all rights to alimony, support or maintenance . . . except as herein referred to and already allowed herein" are waived. The previous reference to the $250 support allowance in the agreement states that respondent must account for the returns from the sales of the property, "excepting only the sum of $250.00 drawn by him for living expenses, and a like amount paid to the First Party." This obviously contemplates future payments following the execution of the agreement, for appellant had been paid in full up to that time, and both were to receive a like amount. They would not be receiving like amounts if it were contemplated that $2,427.35 not drawn by respondent previously, was also to be paid to him. The final paragraph of the agreement allowing alimony payments to appellant to continue with a like amount to be paid respondent, clearly contemplates the future.

It is noteworthy that when the largest piece of income producing property was sold shortly after the agreement was executed, the only deductions made from the proceeds were those listed in the property settlement agreement, that is, expenses of sale, commissions, taxes. Additional expenses, such as cost of title report, were deducted from respondent's share as per that agreement. Nothing was deducted from appellant's share for this charge of respondent's unpaid support. If the provision for the drawing of living expenses contemplated the past as well as the future, then it would

seem only reasonable that respondent would have deducted that amount from the wife's share. He did not then apparently so construe the agreement and he is not now in a position to change the construction of the agreement.

Respondent contends that appellant did not raise this issue at the trial, nor was it raised in the pleadings. However, appellant's attorney did question this item at the trial, respondent admitted that it all accumulated prior to the agreement, and when asked why it wasn't excepted in the property settlement agreement if he meant to preserve the claim, respondent said simply, ''Well, now, don't ask me.'' The accounting report of October 31, 1951, the first made after the agreement and following the sale of the first piece of property, included this charge, and respondent says there was no evidence that appellant protested it. However, the suit asking for an accounting was filed some months later, prior to any of the other reports which repeat this charge.

It seems clear that the property settlement agreement clearly constitutes a release of all rights to family allowance not therein preserved. (Civ. Code, § 1541; *Pellett* v. *Sonotone Corp.*, 26 Cal.2d 705 [160 P.2d 783, 160 A.L.R. 863]; *Faye* v. *Feldman,* 128 Cal.App.2d 319, 328 [275 P.2d 121].) The same type of release was given as to counsel fees, and it is to be noted that the agreement very carefully provides in paragraph 19 for the preservation of the debt for those fees that were then due from respondent.

Despite the fact that the agreement states very clearly that ''the cost of C. T. Plummer, accountant, and any and all other bills of any kind in connection with said real property, including insurance, shall be paid by the Second Party,'' appellant has been charged with half of the expense for the accountant, as well as insurance. There can be no question but that the accountant's fees must be paid entirely by respondent, as well as insurance. ■ Where the agreement is clear, the trial court must apply it according to its plain meaning. (*Messenger* v. *Messenger,* 46 Cal.2d 619, 626 [297 P.2d 988].)

Appellant contends that the trial court misconstrued the property settlement agreement in deciding that the provision requiring written permission for repairs on the property from appellant's attorney, did not include the type of repairs that would be considered ordinary maintenance. This appears to have been an entirely reasonable construction. The agreement prohibited respondent from incurring any debts against the property for repairs without written permission. The trial

court interpreted this to mean repairs of such substantial nature that a contractor's lien might be placed against the property. The one large item of repairs which was strenuously objected to by appellant, the replacement of a boiler for the sum of $1,053.04, was shown to have been approved by appellant's attorney. Attorney Joseph Brown stated in a letter to appellant's attorney that Mr. Ennes was to pay the bill for the heater, and was entitled to have it "taken into account in the accounting between the parties, arising out of the management, by Mr. Ennes of the properties of the parties to be made by Mr. Ennes to Mrs. Ennes."

It is true that respondent admits that he did not pay the $5,000 due to appellant for the Faxon Street property. That he was well able to pay it after the sale of the most substantial piece of the property in August, 1951, is apparent. Even if all of the charges made against Mrs. Ennes were correct, they had not then reached the sum of $5,000. However, since there is some evidence in the record that she had refused to tender the deed to him, he would not have been placed in default, hence no interest would be due to her on this sum. The deed was delivered to the court during trial and the judgment decreed that it was to be delivered to respondent.

As to the sum which was to be paid by respondent out of his own funds to clear the encumbrance on the property at 109 Genessee Street, allotted to appellant, it appears that she would be entitled to interest on that sum from the time the payment was made by her to save the property after respondent's refusal to pay off the deed of trust. This duty on his part was clearly an independent covenant that was not to wait for performance until the final accounting after the sale of all the properties. The respondent undertook to pay this sum *"out of his own funds."*

By the terms of the agreement respondent was to deliver the Aby note (secured) and free of all claims by respondent. This note was delivered at the trial. Appellant had been receiving the collections on the note since the execution of the agreement, although she did not have the note. There is testimony that respondent had security for this note at first, apparently a second mortgage, that this security was released when a new financing agreement was entered into, and that Mrs. Ennes, and her niece, Mrs. Aby, participated in these negotiations. There was no error on the part of the trial court in not ordering respondent to produce the security for the note which was then nonexistent.

Respondent was given credit for taxes which he paid on appellant's separate property after the date of the property settlement agreement. Mrs. Ennes had also paid these taxes. It appears that respondent was a mere volunteer in paying the taxes on her separate property without authorization, and that he should not recover the amount which she also had paid. There is evidence that he cannot get a refund unless appellant furnishes her receipts. If she has this evidence in her possession, she should in good conscience make it available in order that respondent may recover the double payment.

Since the unpaid installments of $250 per month owed to appellant for every month since August 1951 subsequent to the property settlement agreement, were balanced by the unpaid installments due to respondent since that time there was no error in denying appellant's claim in this regard.

In view of the errors noted, this matter must be retried and, accordingly, the judgment must be reversed.

Judgment reversed.

Dooling, Acting P. J., and Draper, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.