[Civ. No. 9566.   Third Dist.   July 20, 1959.]

RAY WESLEY JACKSON, Appellant, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

T. N. Petersen, Samuel K. Brantley, Hansen, McCormick, Barstow & Sheppard and R. A. McCormick for Appellant.

Robert W. Walker, Henry M. Moffat, Louis M. Welsh and Green, Green & Bartow for Respondents.

WARNE, J. pro tem.*—This is an action by plaintiff and appellant to recover damages for personal injuries and property damage sustained as the result of a collision of plaintiff's truck with a train operated by the defendant and respondent Atchison, Topeka and Santa Fe Railway Company (hereinafter referred to as the Santa Fe), occurring where the main line of the Santa Fe crosses Franklin Road in Merced County.

At the conclusion of the plaintiff's case defendants' motion for a nonsuit was denied. However, at the conclusion of the entire case, the trial court granted defendants' motion for a directed verdict. On granting this motion the trial court ruled that, while there was ample evidence of defendants' negligence to go to the jury, the evidence also showed, as a matter of law, that the plaintiff was guilty of contributory negligence either by proceeding onto the tracks in the path of the oncoming train or by failing to leave the truck which had stalled between the rails of the Santa Fe track and remove himself from the area of danger.

Thus the question before us is whether there is any substantial evidence to support a verdict in favor of plaintiff, and if so whether there was a failure of plaintiff to exercise the care required of a reasonably prudent man which was a proximate cause of the accident.

The power of the court to direct a verdict is subject to the same limitations as its power to grant a nonsuit. (*Pellett* v. *Sonotone Corp.*, 26 Cal.2d 705, 708 [160 P.2d 783, 160 A.L.R. 863]; *Reynolds* v. *Willson*, 51 Cal.2d 94, 99 [331 P.2d

---

*Assigned by Chairman of Judicial Council.

48].) ██ And as stated in *Ross* v. *Atchison, T. & S. F. Ry. Co.*, 141 Cal.App.2d 178 [296 P.2d 372] :

". . . A motion made under section 630, *supra* [Code of Civil Procedure], is properly granted only when, disregarding conflicting evidence and giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging in every legitimate inference, there is no evidence of sufficient substantiality to support a verdict for plaintiff. If the evidence is such that fairminded men might honestly draw different conclusions as to the existence of negligence on the part of defendants and of contributory negligence on the part of plaintiff, the question is not one of law but one of fact. . . ."

Applying these rules of law to the facts most favorable to the plaintiff in the instant case we feel that the judgment must be reversed.

██ The accident occurred on the evening of October 18, 1956. It was a clear moonlight night. Plaintiff testified that before he drove on the tracks he looked down the tracks and that there was no train then in sight. The undisputed evidence shows that there was an unobstructed view for two miles down the railroad tracks from the road crossing. Plaintiff testified that he was unfamiliar with the crossing; that he had never been over it before. He also testified that "When I got on the crossing, I would say with my front wheels, they were, I don't know just where, some place between the rails; well, I hit just a big bump, like maybe a wheel fell off or it had dropped in a terrible hole and I just automatically hit my brakes . . . and my motor died." The testimony shows that the railroad crossing had been maintained in a poor condition. One witness testified that, to his knowledge, from 1953 until the collision in 1956 the roadbed between the rails, at the crossing in question, was extremely rough with holes extending in depth "clear down to the ties"; another witness testified that from 1952 until the collision in 1956 the portion of the road that lies between the rails was much narrower laterally than the county road approaching the crossing, and that portions of this part of the roadbed were eroded out clear down to the ties, particularly on the western edge of this road—which was the portion traversed by the plaintiff's truck—and that this portion (as well as other portions) was "eaten out" and "pretty rough." It was stipulated that the defendants had been fully aware of this exact condition of the crossing for a period of at least six months prior to the collision. It is obvious that the Santa Fe

was negligent in the manner in which they maintained this crossing.

At the time appellant drove his truck up and onto the crossing of the Santa Fe railroad tracks he was accompanied by a soldier. The identity of the soldier was unknown to plaintiff and he was unable to produce him at the trial.

After the motor died plaintiff remained in the cab of the truck trying to start the motor, but was unable to get it started. He put it in gear and pulled it with the starter while the soldier pushed from the front but was unable to roll the truck back out of a hole between the railroad tracks. Plaintiff testified that prior to the time he noticed the approaching train he had been on the tracks not more than three minutes, "and I think not less than two." It was not until the train was approximately one-quarter of a mile distant from the crossing that plaintiff first saw it. Likewise, the engineer of the train did not see the truck until he was one-quarter of a mile distant therefrom. The train was traveling at a rate of speed of at least 82 miles per hour. The plaintiff testified that after he saw the train he made one last attempt to start the engine before trying to get out of the truck. He had some difficulty in getting the door open and he did not know whether he was in the truck or out of it when the impact occurred. However, several eyewitnesses, including the engineer of the train, testified that prior to the impact a man jumped from the truck to a place of safety off the right of way. If plaintiff did jump from the truck, it could be found that he was struck by a piece of flying debris since after the collision he was found lying on the ground adjoining the right of way in an unconscious state. Consequently, it should have been left to the jury to determine whether appellant did so jump from the truck. If they found that he did, then it would be for them to determine if he was negligent in not getting out sooner and going to a place of safety further distant from the scene. Such evidence presented a factual question upon which fairminded men might honestly draw different conclusions as to whether there was contributory negligence on the part of the plaintiff. Hence it was not one of law but one of fact. In view of these facts it cannot be held, as a matter of law, that appellant's efforts to start the truck and remove it from the tracks rather than immediately abandoning it and going to a place of safety constituted contributory negligence as a matter of law.

Nor can it be held, as a matter of law, that plaintiff violated the "Stop, Look and Listen rule" by proceeding onto the tracks in the path of the approaching train. At the time plaintiff drove onto the tracks the train was not in view. He had been stalled at least two minutes when he first saw the train one quarter of a mile away. Further, the train traveling at a speed of 82 miles per hour moved a distance of two miles in approximately 86 seconds, which is less than one and a half minutes. Therefore, it could be concluded that the plaintiff could not have seen the train at the time he entered the crossing.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied August 18, 1959, and respondents' petition for a hearing by the Supreme Court was denied September 16, 1959.